# ANDERSON *v.* CITY OF BESSEMER CITY, NORTH CAROLINA

No. 83–1623.   Argued December 3, 1984—Decided March 19, 1985

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, MARSHALL, POWELL, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. POWELL, J., filed a concurring opinion, *post*, p. 581. BLACKMUN, J., filed an opinion concurring in the judgment, *post*, p. 581.

*Jonathan Wallas* argued the cause for petitioner. With him on the briefs were *John T. Nockelby, J. LeVonne Chambers, O. Peter Sherwood,* and *Eric Schnapper.*

*Carolyn S. Corwin* argued the cause for the United States et al. as *amici curiae* urging reversal. With her on the brief were *Solicitor General Lee, Deputy Solicitor General Wallace, Johnny J. Butler,* and *Philip B. Sklover.*

*Philip M. Van Hoy* argued the cause for respondent. With him on the brief were *Eugene Gressman* and *Arthur C. Blue III.\**

JUSTICE WHITE delivered the opinion of the Court.

In *Pullman-Standard* v. *Swint,* 456 U. S. 273 (1982), we held that a District Court's finding of discriminatory intent in an action brought under Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.*, is a factual finding that may be overturned on appeal only if it is clearly erroneous. In this case, the Court of Appeals for the Fourth Circuit concluded that there was clear error in a District Court's finding of discrimination and reversed. Because our reading of the record convinces us that the Court of Appeals misapprehended and misapplied the clearly-erroneous standard, we reverse.

---

*\*Joan E. Bertin, E. Richard Larson, Burt Neuborne,* and *Isabelle Katz Pinzler* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging reversal.

# I

Early in 1975, officials of respondent Bessemer City, North Carolina, set about to hire a new Recreation Director for the city. Although the duties that went with the position were not precisely delineated, the new Recreation Director was to be responsible for managing all of the city's recreational facilities and for developing recreational programs—athletic and otherwise—to serve the needs of the city's residents. A five-member committee selected by the Mayor was responsible for choosing the Recreation Director. Of the five members, four were men; the one woman on the committee, Mrs. Auddie Boone, served as the chairperson.

Eight persons applied for the position of Recreation Director. Petitioner, at the time a 39-year-old schoolteacher with college degrees in social studies and education, was the only woman among the eight. The selection committee reviewed the resumés submitted by the applicants and briefly interviewed each of the jobseekers. Following the interviews, the committee offered the position to Mr. Donald Kincaid, a 24-year-old who had recently graduated from college with a degree in physical education. All four men on the committee voted to offer the job to Mr. Kincaid; Mrs. Boone voted for petitioner.

Believing that the committee had passed over her in favor of a less qualified candidate solely because she was a woman, petitioner filed discrimination charges with the Charlotte District Office of the Equal Employment Opportunity Commission. In July 1980 (five years after petitioner filed the charges), the EEOC's District Director found that there was reasonable cause to believe that petitioner's charges were true and invited the parties to attempt a resolution of petitioner's grievance through conciliation proceedings. The EEOC's efforts proved unsuccessful, and in due course, petitioner received a right-to-sue letter.

Petitioner then filed this Title VII action in the United States District Court for the Western District of North

Carolina. After a 2-day trial during which the court heard testimony from petitioner, Mr. Kincaid, and the five members of the selection committee, the court issued a brief memorandum of decision setting forth its finding that petitioner was entitled to judgment because she had been denied the position of Recreation Director on account of her sex. In addition to laying out the rationale for this finding, the memorandum requested that petitioner's counsel submit proposed findings of fact and conclusions of law expanding upon those set forth in the memorandum. Petitioner's counsel complied with this request by submitting a lengthy set of proposed findings (App. 11a–34a); the court then requested and received a response setting forth in detail respondent's objections to the proposed findings (*id.*, at 36a–47a)—objections that were, in turn, answered by petitioner's counsel in a somewhat less lengthy reply (*id.*, at 48a–54a). After receiving these submissions, the court issued its own findings of fact and conclusions of law. 557 F. Supp. 412, 413–419 (1983).

As set forth in the formal findings of fact and conclusions of law, the court's finding that petitioner had been denied employment by respondent because of her sex rested on a number of subsidiary findings. First, the court found that at the time the selection committee made its choice, petitioner had been better qualified than Mr. Kincaid to perform the range of duties demanded by the position. The court based this finding on petitioner's experience as a classroom teacher responsible for supervising schoolchildren in recreational and athletic activities, her employment as a hospital recreation director in the late 1950's, her extensive involvement in a variety of civic organizations, her knowledge of sports acquired both as a high school athlete and as a mother of children involved in organized athletics, her skills as a public speaker, her experience in handling money (gained in the course of her community activities and in her work as a bookkeeper for a group of physicians), and her knowledge of

music, dance, and crafts. The court found that Mr. Kincaid's principal qualifications were his experience as a student teacher and as a coach in a local youth basketball league, his extensive knowledge of team and individual sports, acquired as a result of his lifelong involvement in athletics, and his formal training as a physical education major in college. Noting that the position of Recreation Director involved more than the management of athletic programs, the court concluded that petitioner's greater breadth of experience made her better qualified for the position.

Second, the court found that the male committee members had in fact been biased against petitioner because she was a woman. The court based this finding in part on the testimony of one of the committee members that he believed it would have been "real hard" for a woman to handle the job and that he would not want his wife to have to perform the duties of the Recreation Director. The finding of bias found additional support in evidence that another male committee member had told Mr. Kincaid, the successful applicant, of the vacancy and had also solicited applications from three other men, but had not attempted to recruit any women for the job.

Also critical to the court's inference of bias was its finding that petitioner, alone among the applicants for the job, had been asked whether she realized the job would involve night work and travel and whether her husband approved of her applying for the job. The court's finding that the committee had pursued this line of inquiry only with petitioner was based on the testimony of petitioner that these questions had been asked of her and the testimony of Mrs. Boone that similar questions had not been asked of the other applicants. Although Mrs. Boone also testified that during Mr. Kincaid's interview, she had made a "comment" to him regarding the reaction of his new bride to his taking the position of Recreation Director, the court concluded that this comment was not a serious inquiry, but merely a "facetious" remark prompted by Mrs. Boone's annoyance that only petitioner

had been questioned about her spouse's reaction. The court also declined to credit the testimony of one of the male committee members that Mr. Kincaid had been asked about his wife's feelings "in a way" and the testimony of another committeeman that all applicants had been questioned regarding their willingness to work at night and their families' reaction to night work. The court concluded that the finding that only petitioner had been seriously questioned about her family's reaction suggested that the male committee members believed women had special family responsibilities that made certain forms of employment inappropriate.

Finally, the court found that the reasons offered by the male committee members for their choice of Mr. Kincaid were pretextual. The court rejected the proposition that Mr. Kincaid's degree in physical education justified his choice, as the evidence suggested that where male candidates were concerned, the committee valued experience more highly than formal training in physical education.[1] The court also rejected the claim of one of the committeemen that Mr. Kincaid had been hired because of the superiority of the recreational programs he planned to implement if selected for the job. The court credited the testimony of one of the other committeemen who had voted for Mr. Kincaid that the programs outlined by petitioner and Mr. Kincaid were substantially identical.

On the basis of its findings that petitioner was the most qualified candidate, that the committee had been biased against hiring a woman, and that the committee's explanations for its choice of Mr. Kincaid were pretextual, the court

---

[1] The evidence established that the committee members had initially favored a third candidate, Bert Broadway, and had decided not to hire him only because he stated that he was unwilling to move to Bessemer City. Mr. Broadway had two years of experience as a community recreation director; but like petitioner, he lacked a college degree in physical education.

concluded that petitioner had met her burden of establishing that she had been denied the position of Recreation Director because of her sex. Petitioner having conceded that ordering the city to hire her would be an inappropriate remedy under the circumstances, the court awarded petitioner backpay in the amount of $30,397 and attorney's fees of $16,971.59.

The Fourth Circuit reversed the District Court's finding of discrimination. 717 F. 2d 149 (1983). In the view of the Court of Appeals, three of the District Court's crucial findings were clearly erroneous: the finding that petitioner was the most qualified candidate, the finding that petitioner had been asked questions that other applicants were spared, and the finding that the male committee members were biased against hiring a woman. Having rejected these findings, the Court of Appeals concluded that the District Court had erred in finding that petitioner had been discriminated against on account of her sex.

## II

We must deal at the outset with the Fourth Circuit's suggestion that "close scrutiny of the record in this case [was] justified by the manner in which the opinion was prepared," *id.*, at 156—that is, by the District Court's adoption of petitioner's proposed findings of fact and conclusions of law. The court recalled that the Fourth Circuit had on many occasions condemned the practice of announcing a decision and leaving it to the prevailing party to write the findings of fact and conclusions of law. See, *e. g.*, *Cuthbertson* v. *Biggers Bros., Inc.*, 702 F. 2d 454 (1983); *EEOC* v. *Federal Reserve Bank of Richmond*, 698 F. 2d 633 (1983); *Chicopee Mfg. Corp.* v. *Kendall Co.*, 288 F. 2d 719 (1961). The court rejected petitioner's contention that the procedure followed by the trial judge in this case was proper because the judge had given respondent an opportunity to object to the proposed findings and had not adopted petitioner's findings ver-

batim. According to the court, the vice of the procedure lay in the trial court's solicitation of findings after it had already announced its decision and in the court's adoption of the "substance" of petitioner's proposed findings.

We, too, have criticized courts for their verbatim adoption of findings of fact prepared by prevailing parties, particularly when those findings have taken the form of conclusory statements unsupported by citation to the record. See, *e. g.,* *United States* v. *El Paso Natural Gas Co.,* 376 U. S. 651, 656–657 (1964); *United States* v. *Marine Bancorporation,* 418 U. S. 602, 615, n. 13 (1974). We are also aware of the potential for overreaching and exaggeration on the part of attorneys preparing findings of fact when they have already been informed that the judge has decided in their favor. See J. Wright, The Nonjury Trial—Preparing Findings of Fact, Conclusions of Law, and Opinions, Seminars for Newly Appointed United States District Judges 159, 166 (1962). Nonetheless, our previous discussions of the subject suggest that even when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous. *United States* v. *Marine Bancorporation, supra,* at 615, n. 13; *United States* v. *El Paso Natural Gas Co., supra,* at 656–657.

In any event, the District Court in this case does not appear to have uncritically accepted findings prepared without judicial guidance by the prevailing party. The court itself provided the framework for the proposed findings when it issued its preliminary memorandum, which set forth its essential findings and directed petitioner's counsel to submit a more detailed set of findings consistent with them. Further, respondent was provided and availed itself of the opportunity to respond at length to the proposed findings. Nor did the District Court simply adopt petitioner's proposed findings: the findings it ultimately issued—and particularly the crucial findings regarding petitioner's qualifications, the questioning to which petitioner was subjected, and bias on the part of the committeemen—vary considerably in orga-

nization and content from those submitted by petitioner's counsel.   Under these circumstances, we see no reason to doubt that the findings issued by the District Court represent the judge's own considered conclusions.   There is no reason to subject those findings to a more stringent appellate review than is called for by the applicable rules.

## III

Because a finding of intentional discrimination is a finding of fact, the standard governing appellate review of a district court's finding of discrimination is that set forth in Federal Rule of Civil Procedure 52(a): "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."   The question before us, then, is whether the Court of Appeals erred in holding the District Court's finding of discrimination to be clearly erroneous.

Although the meaning of the phrase "clearly erroneous" is not immediately apparent, certain general principles governing the exercise of the appellate court's power to overturn findings of a district court may be derived from our cases. The foremost of these principles, as the Fourth Circuit itself recognized, is that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."   *United States* v. *United States Gypsum Co.*, 333 U. S. 364, 395 (1948). This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court.   "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.*"   *Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 395 U. S. 100, 123 (1969).   If the

district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States* v. *Yellow Cab Co.*, 338 U. S. 338, 342 (1949); see also *Inwood Laboratories, Inc.* v. *Ives Laboratories, Inc.*, 456 U. S. 844 (1982).

This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts. To be sure, various Courts of Appeals have on occasion asserted the theory that an appellate court may exercise *de novo* review over findings not based on credibility determinations. See, *e. g.*, *Orvis* v. *Higgins*, 180 F. 2d 537 (CA2 1950); *Lydle* v. *United States*, 635 F. 2d 763, 765, n. 1 (CA6 1981); *Swanson* v. *Baker Industries, Inc.*, 615 F. 2d 479, 483 (CA8 1980). This theory has an impressive genealogy, having first been articulated in an opinion written by Judge Frank and subscribed to by Judge Augustus Hand, see *Orvis* v. *Higgins, supra,* but it is impossible to trace the theory's lineage back to the text of Rule 52(a), which states straightforwardly that "findings of fact shall not be set aside unless clearly erroneous." That the Rule goes on to emphasize the special deference to be paid credibility determinations does not alter its clear command: Rule 52(a) "does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous." *Pullman-Standard* v. *Swint,* 456 U. S., at 287.

The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial

judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much. As the Court has stated in a different context, the trial on the merits should be "the 'main event' . . . rather than a 'tryout on the road.'" *Wainwright* v. *Sykes*, 433 U. S. 72, 90 (1977). For these reasons, review of factual findings under the clearly-erroneous standard—with its deference to the trier of fact—is the rule, not the exception.

When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. See *Wainwright* v. *Witt*, 469 U. S. 412 (1985). This is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination. See, *e. g.*, *United States* v. *United States Gypsum Co.*, *supra*, at 396. But when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

Cf. *United States* v. *Aluminum Co. of America*, 148 F. 2d 416, 433 (CA2 1945); *Orvis* v. *Higgins, supra*, at 539–540.

## IV

Application of the foregoing principles to the facts of the case lays bare the errors committed by the Fourth Circuit in its employment of the clearly-erroneous standard. In detecting clear error in the District Court's finding that petitioner was better qualified than Mr. Kincaid, the Fourth Circuit improperly conducted what amounted to a *de novo* weighing of the evidence in the record. The District Court's finding was based on essentially undisputed evidence regarding the respective backgrounds of petitioner and Mr. Kincaid and the duties that went with the position of Recreation Director. The District Court, after considering the evidence, concluded that the position of Recreation Director in Bessemer City carried with it broad responsibilities for creating and managing a recreation program involving not only athletics, but also other activities for citizens of all ages and interests. The court determined that petitioner's more varied educational and employment background and her extensive involvement in a variety of civic activities left her better qualified to implement such a rounded program than Mr. Kincaid, whose background was more narrowly focused on athletics.

The Fourth Circuit, reading the same record, concluded that the basic duty of the Recreation Director was to implement an athletic program, and that the essential qualification for a successful applicant would be either education or experience specifically related to athletics.[2] Accordingly, it

---

[2] The Fourth Circuit thus saw no inconsistency between the statement of the male committee members that they preferred Bert Broadway because of his experience and their claim that they had selected Mr. Kincaid over petitioner because of his formal training. See n. 1, *supra*. In the view of the Court of Appeals, this demonstrated only that Mr. Broadway had relevant experience and Mr. Kincaid had relevant education, while petitioner had neither.

seemed evident to the Court of Appeals that Mr. Kincaid was in fact better qualified than petitioner.

Based on our own reading of the record, we cannot say that either interpretation of the facts is illogical or implausible. Each has support in inferences that may be drawn from the facts in the record; and if either interpretation had been drawn by a district court on the record before us, we would not be inclined to find it clearly erroneous. The question we must answer, however, is not whether the Fourth Circuit's interpretation of the facts was clearly erroneous, but whether the District Court's finding was clearly erroneous. See *McAllister* v. *United States*, 348 U. S. 19, 20–21 (1954). The District Court determined that petitioner was better qualified, and, as we have stated above, such a finding is entitled to deference notwithstanding that it is not based on credibility determinations. When the record is examined in light of the appropriately deferential standard, it is apparent that it contains nothing that mandates a finding that the District Court's conclusion was clearly erroneous.

Somewhat different concerns are raised by the Fourth Circuit's treatment of the District Court's finding that petitioner, alone among the applicants for the position of Recreation Director, was asked questions regarding her spouse's feelings about her application for the position. Here the error of the Court of Appeals was its failure to give due regard to the ability of the District Court to interpret and discern the credibility of oral testimony. The Court of Appeals rested its rejection of the District Court's finding of differential treatment on its own interpretation of testimony by Mrs. Boone—the very witness whose testimony, in the view of the District Court, supported the finding. In the eyes of the Fourth Circuit, Mrs. Boone's testimony that she had made a "comment" to Mr. Kincaid about the feelings of his wife (a comment judged "facetious" by the District Court) conclusively established that Mr. Kincaid, and perhaps other male applicants as well, had been questioned about the feelings of his spouse.

Mrs. Boone's testimony on this point, which is set forth in the margin,[3] is certainly not free from ambiguity. But Mrs. Boone several times stated that other candidates had not been questioned about the reaction of their wives—at least, "not in the same context" as had petitioner. And even after recalling and calling to the attention of the court that she had made a comment on the subject to Mr. Kincaid, Mrs. Boone denied that she had "asked" Mr. Kincaid about his wife's reaction. Mrs. Boone's testimony on these matters is not

---

[3] "Q: Did the committee members ask that same kind of question of the other applicants?

"A: Not that I recall.

.          .          .          .          .

"Q: Do you deny that the other applicants, aside from the plaintiff, were asked about the prospect of working at night in that position?

"A: Not to my knowledge.

"Q: Are you saying they were not asked that?

"A: They were not asked, not in the context that they were asked of Phyllis. I don't know whether they were worried because Jim wasn't going to get his supper or what. You know, that goes both ways.

"Q: Did you tell Phyllis Anderson that Donnie Kincaid was not asked about night work?

"A: He wasn't asked about night work.

"Q: That answers one question. Now, let's answer the other one. Did you tell Phyllis Anderson that, that Donnie Kincaid was not asked about night work?

"A: Yes, after the interviews—I think the next day or sometime, and I know—may I answer something?

"Q: If it's a question that has been asked; otherwise, no. It's up to the Judge to say.

"A: You asked if there was any question asked about—I think Donnie was just married, and I think I made the comment to him personally—and your new bride won't mind.

"Q: So, you asked him yourself about his own wife's reaction?

"A: No, no.

"Q: That is what you just said.

"Mr. Gibson: Objection, Your Honor.

"[The] Court: Sustained. You don't have to rephrase the answer."

App. 108a, 120a-121a.

inconsistent with the theory that her remark was not a serious inquiry into whether Mr. Kincaid's wife approved of his applying for the position. Whether the judge's interpretation is actually correct is impossible to tell from the paper record, but it is easy to imagine that the tone of voice in which the witness related her comment, coupled with her immediate denial that she had questioned Mr. Kincaid on the subject, might have conclusively established that the remark was a facetious one. We therefore cannot agree that the judge's conclusion that the remark was facetious was clearly erroneous.

Once the trial court's characterization of Mrs. Boone's remark is accepted, it is apparent that the finding that the male candidates were not seriously questioned about the feelings of their wives cannot be deemed clearly erroneous. The trial judge was faced with the testimony of three witnesses, one of whom (Mrs. Boone) stated that none of the other candidates had been so questioned, one of whom (a male committee member) testified that Mr. Kincaid had been asked such a question "in a way," and one of whom (another committeeman) testified that all the candidates had been subjected to similar questioning. None of these accounts is implausible on its face, and none is contradicted by any reliable extrinsic evidence. Under these circumstances, the trial court's decision to credit Mrs. Boone was not clearly erroneous.

The Fourth Circuit's refusal to accept the District Court's finding that the committee members were biased against hiring a woman was based to a large extent on its rejection of the finding that petitioner had been subjected to questioning that the other applicants were spared. Given that that finding was not clearly erroneous, the finding of bias cannot be termed erroneous: it finds support not only in the treatment of petitioner in her interview, but also in the testimony of one committee member that he believed it would have been difficult for a woman to perform the job and in the evidence

that another member solicited applications for the position only from men.[4]

Our determination that the findings of the District Court regarding petitioner's qualifications, the conduct of her interview, and the bias of the male committee members were not clearly erroneous leads us to conclude that the court's finding that petitioner was discriminated against on account of her sex was also not clearly erroneous. The District Court's findings regarding petitioner's superior qualifications and the bias of the selection committee are sufficient to support the inference that petitioner was denied the position of Recreation Director on account of her sex. Accordingly, we hold that the Fourth Circuit erred in denying petitioner relief under Title VII.

In so holding, we do not assert that our knowledge of what happened 10 years ago in Bessemer City is superior to that of the Court of Appeals; nor do we claim to have greater insight than the Court of Appeals into the state of mind of the men on the selection committee who rejected petitioner for the position of Recreation Director. Even the trial judge, who has heard the witnesses directly and who is more closely in touch than the appeals court with the milieu out of which the controversy before him arises, cannot always be confident that he "knows" what happened. Often, he can only determine whether the plaintiff has succeeded in presenting an account of the facts that is more likely to be true than not. Our task—and the task of appellate tribunals generally—is more limited still: we must determine whether the trial

---

[4] The Fourth Circuit's suggestion that any inference of bias was dispelled by the fact that each of the male committee members was married to a woman who had worked at some point in the marriage is insufficient to establish that the finding of bias was clearly erroneous. Although we decline to hold that a man's attitude toward his wife's employment is irrelevant to the question whether he may be found to have a bias against working women, any relevance the factor may have in a particular case is a matter for the district court to weigh in its consideration of bias, not the court of appeals.

judge's conclusions are clearly erroneous. On the record before us, we cannot say that they are. Accordingly, the judgment of the Court of Appeals is

*Reversed.*

JUSTICE POWELL, concurring.

I do not dissent from the judgment that the Court of Appeals misapplied Rule 52(a) in this case. I write separately, however, because I am concerned that one may read the Court's opinion as implying criticism of the Court of Appeals for the very fact that it engaged in a comprehensive review of the entire record of this case. Such a reading may encourage overburdened Courts of Appeals simply to apply Rule 52(a) in a conclusory fashion, rather than to undertake the type of burdensome review that may be appropriate in some cases.

In this case, the Court of Appeals made no arbitrary judgment that the action of the District Court was clearly erroneous. On the contrary, the court meticulously reviewed the entire record and reached the conclusion that the District Court was in error. One easily could agree with the Court of Appeals that the District Court committed a mistake in its finding of sex discrimination, based, as it was, on fragmentary statements made years before* in informal exchanges between members of the selection committee and the applicants for the position to be filled. On the record before us, however, the factual issue fairly could be decided for either party. Therefore, as the Court holds, the District Court's decision was not clearly erroneous within the meaning of Rule 52(a).

JUSTICE BLACKMUN, concurring in the judgment.

I would like to join the Court's opinion, for I think its judgment is correct, and I agree with most of what the Court

---

*The Charlotte branch of the EEOC, with whom petitioner filed a complaint, took no action for five years. The testimony at trial, therefore, was based on stale recollections.

says. I, however, do not join the broad dictum, *ante*, at 573–574, to the effect that the same result is to be reached when the district court's findings are based wholly on documentary evidence and do not rest at all on credibility determinations. In the past, I have joined at least one opinion that, generally, is to the opposite effect. See *United States* v. *Mississippi Valley Barge Line Co.*, 285 F. 2d 381, 388 (CA8 1960). See also *Ralston Purina Co.* v. *General Foods Corp.*, 442 F. 2d 389, 391 (CA8 1971); *Frito-Lay, Inc.* v. *So Good Potato Chip Co.*, 540 F. 2d 927, 930 (CA8 1976); *Swanson* v. *Baker Industries, Inc.*, 615 F. 2d 479, 483 (CA8 1980).

While the Court may be correct in its dictum today, certainly this case does not require us to decide the question. The record contains far more than documentary evidence, as the Court's opinion so adequately discloses. In a case that requires resolution of the question, I might eventually be persuaded that the Court's approach is wise. I prefer, however, to wait for a case where the issue must be resolved and where it has been briefed and argued by the parties, rather than to address the issue by edict without these customary safeguards.

I therefore join the Court only in its judgment and not in its opinion.