Donna HAYDEN, Jacqueline Perry and South Suburban Housing Center, Plaintiffs-Appellees,

v.

OAK TERRACE APARTMENTS and Oak Maintenance Association and Mr. & Mrs. Benjamin Roscrow, Defendants-Appellants.

UNITED STATES of America, Plaintiff-Appellee,

v.

OAK TERRACE APARTMENTS and Oak Maintenance Association and Mr. & Mrs. Benjamin Roscrow, Defendants-Appellants.

No. 86–1767.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1986.

Decided Jan. 7, 1987.

Patrick J. Reilly, Patrick J. Reilly & Assoc., Chicago, Ill., for defendants-appellants.

Jeffrey L. Taren, Kinoy, Taren, Geraghty & Potter, Chicago, Ill., Miriam Eisenstein, Dept. of Justice, Washington, D.C., for plaintiffs-appellees.

Before BAUER, Chief Judge, and CUMMINGS and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Defendants-appellants argue that the district court's decision to credit the testimony of a witness they term a "pathological liar," rather than their own testimony, was clearly erroneous, and that the judgment of civil contempt imposed on them must therefore be reversed. We affirm the judgment of the district court.

## I.

This is a fair housing case. Since 1978, defendants-appellants Mr. and Mrs. Benjamin Roscrow ("the Roscrows") have owned two buildings at the Oak Terrace Apartments in Oak Forest, Illinois. Every owner of a building in the Oak Terrace apartment complex is a member of the Oak Maintenance Association ("the Association"), an organization responsible for maintaining the common grounds of the complex. The Association operates a rental office for the convenience of the owners. This rental office provides information about available apartments, shows apartments to prospective tenants, and screens applicants for apartments. However, only the owner of a building has the authority to rent an apartment in that building. From 1978 through January, 1985, the Roscrows rented their vacant apartments through the Association's rental office.

In September, 1984, plaintiffs South Suburban Housing Center ("SSHC") and two

black "testers"[1] filed suit against the Oak Terrace Apartments, the Association and its rental agent, and all individual building owners at the Oak Terrace Apartments. The lawsuit alleged that defendants were engaged in a pattern and practice of discrimination on the basis of race in the rental of apartments, in violation of the Fair Housing Act, 42 U.S.C. §§ 3601–3631 (1982). The suit was resolved by consent decree on April 13, 1985. On April 18, 1985, the United States filed a similar suit against the Oak Terrace Apartments and the Association. This second suit was resolved by consent decree on April 30, 1985.

The consent orders, *inter alia,* permanently enjoin the defendants from "making unavailable or denying a dwelling to any person because of race, color, or national origin," and from "making ... [any statement] with respect to the rental of a dwelling that indicates any preference, limitation or discrimination based on race, color, or national origin." *Hayden v. Oak Terrace Apts. and Oak Maintenance Ass'n,* No. 84–C–8220 (N.D.Ill. Apr. 12, 1985) at 2 (consent order) [Available on WESTLAW, DCTU database]; *see also United States v. Oak Terrace Apts. and Oak Maintenance Ass'n,* No. 85–C–3932 (N.D.Ill. Apr. 29, 1985) at 2 (consent order). On September 19, 1985, the United States filed a motion to have Mr. and Mrs. Roscrow held in civil contempt for violation of the consent decree to which it was a party. The motion alleged that the Roscrows had asked the Association's rental agent to rent one of their apartments; that the agent had found a suitable prospective tenant; and that the Roscrows had rejected the applicant because she was black. On November 27, 1985, SSHC also filed a motion to have the Roscrows held in civil contempt for violating the consent decree, based on the same factual allegations as the United States' motion. The Roscrows responded on December 6, 1985, denying that they had authorized or requested the rental agent of the Association to rent their apartment for them, and denying that they had rejected the applicant because of race.

The two motions were consolidated, and a joint pretrial order was filed on March 6, 1986. The case was tried on March 10 and 11, 1986. At the end of the trial, the court ruled from the bench that the plaintiffs had proven their charges by clear and convincing evidence. A final order of civil contempt was entered on April 7, 1986.[2] The Roscrows now appeal from that order.

## II.

The sole issue in this case is whether the trial court's factual findings are clearly erroneous. We hold that they are not.

"In civil contempt proceedings for violations of a consent decree, plaintiffs must prove the violations by clear and convincing evidence in the trial court." *United States v. Huebner,* 752 F.2d 1235, 1241 (7th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 62, 88 L.Ed.2d 50 (1985); *see also Shakman v. Democratic Organization of Cook County,* 533 F.2d 344, 351 (7th Cir.), *cert. denied,* 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976). The Roscrows do not deny that if the trial court's findings of fact are correct, they violated the consent orders. They merely contend that the evidence

---

**1.** The Supreme Court has defined testers as "individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices." *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1981).

**2.** The contempt order permanently enjoined the Roscrows from discriminating on the basis of race in their rental activities, and imposed a broad range of recordkeeping requirements on them. In addition, the court ordered that the Roscrows sign a statement under oath to the effect that they had read the consent orders and the contempt order; that they understood their legal obligations under the orders to rent housing on a non-discriminatory basis; that they would comply with such laws and orders; and that they understood that their failure to conform their conduct to those orders might subject them to further court action. Finally, the contempt order required the Roscrows to pay attorneys' fees and costs to the defendants. *Hayden v. Oak Terrace Apartments,* Nos. 84–C–8220 & 85–C–3932 (N.D.Ill. Apr. 7, 1986) (contempt order).

against them was not clear and convincing, because the trial court erred in weighing the testimony before it.

Our review of disputed findings of fact is pursuant to Federal Rule of Civil Procedure 52(a), which provides: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." *See also Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Ratliff v. City of Milwaukee,* 795 F.2d 612, 616–17 (7th Cir.1986). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson,* 470 U.S. at 573, 105 S.Ct. at 1511 (*quoting United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Moreover, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.* 470 U.S. at 575, 105 S.Ct. at 1512; *see also Landau & Cleary, Ltd. v. Hribar Trucking, Inc.,* 807 F.2d 91, 94; *Ratliff,* 795 F.2d at 617.

In order to evaluate the trial court's judgments of credibility in this case, it is necessary to place the disputed findings in context. As required by the SSHC consent order, the Roscrows were sent two copies of a "non-discrimination statement" which they were to sign and return to the Association's attorney, Fred Becker.[3] The Ros-

crows, however, refused to sign the statement. In response, Mr. Becker notified them that they were no longer entitled to use the Association's rental office. Becker also notified Eve Ingerson, the Association's rental agent, that she should no longer handle apartment rentals on behalf of the Roscrows. Nevertheless, an apartment owned by the Roscrows that became vacant on or about July 1, 1985 was included on two of the Association's rental office lists of available apartments.

In early August, Vicki Jennings, a black woman, was shown the apartment. She filed an application and was found to be financially qualified to rent the apartment. On August 9, 1985, Ingerson telephoned the Roscrows and told Mrs. Roscrow that she had found a qualified tenant for the vacant apartment, and that the applicant was black. Mrs. Roscrow passed this information on to her husband. Later that day, Ingerson spoke to Mr. Roscrow directly about the apartment. The Roscrows did not rent their apartment to Jennings, and they made no attempt to rent the apartment on their own until August 18, 1985, when Mr. Roscrow placed a newspaper ad for the apartment in the *Southtown Economist.* The apartment was eventually rented to a white man.

As Judge Moran stated at the end of the trial, in this case "it ultimately gets down to who you believe." There were two conflicting stories about what happened, one provided by the Roscrows and one provided by the Association's rental agent, Ingerson. Despite contradictions and some confusion in Ingerson's testimony, the court believed her at two key points: when Ingerson said Mr. Roscrow asked her to list the Roscrows' apartment; and when she said Mr.

---

**3.** The SSHC consent order reads in pertinent part:

Each person who lists an apartment for rent with the Association's rental office shall sign a statement ... indicating that he or she has been advised of the defendant's non-discriminatory policies and practices, that he or she has received a copy of this Order and has read and understands its provisions, that he or she will comply with this Order, and that he or

she is aware that any person who lists apartments for rent with the Defendants' rental office and who refuses or fails to conform with these policies and practices and to this Court Order may be subject to possible court action, and shall no longer have the privilege of listing apartments for rent with the defendants.

*Hayden,* No. 84–C–8220 at 4–5.

Roscrow told her he rejected Jennings as a prospective tenant ·because Jennings was black. Defendants' version of what happened is that Ingerson somehow found out about the vacancy and showed the apartment on her own, without the Roscrows' permission. This is contrary to the parties' stipulation that "the only way for an apartment to be listed for rent with the Association's rental office is for an owner to inform the rental agent of the apartment's availability and request that it be listed." Defendants also claimed repeatedly at oral argument that Mr. Roscrow "never said anything about 'black.'" They argue that Ingerson is a "pathological liar" and that her testimony is totally untrustworthy. However, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson,* 470 U.S. at 574, 105 S.Ct. at 1512.

Here the trial judge carefully set out his findings. He found Ingerson's testimony "confused" at certain points, but clear as to the two key statements. He also found that Ingerson's testimony as to Roscrow's discriminatory refusal to rent was supported by other evidence, including the testimony of other witnesses. In the judge's view, Mr. Roscrow's refusal to sign the consent statement signified that he believed he was free to refuse to rent to black people. The judge also found it telling that the Roscrows made no effort on their own to rent the apartment until almost two months after it became vacant. Finally, the judge found that Ingerson could not have known to show the apartment unless Mr. Roscrow had listed it with her. He therefore credited Ingerson's testimony and rejected the Roscrows'. Because there is no indication that the credited testimony is "incoherent, internally inconsistent, implausible on its face, or contradicted by extrinsic evidence," *Ratliff,* 795 F.2d at 617, the district court's decision is not clearly erroneous.[4]

---

**4.** Defendants also argue that the trial court failed to find an agency relationship between the Roscrows and Eve Ingerson. However, no

The decision of the trial court is affirmed.

such finding was necessary, because the Roscrows were held in contempt on the basis of their own conduct, not Ingerson's.