**MONARCH BEVERAGE CO., INC.,**
**Plaintiff-Appellant,**

v.

**TYFIELD IMPORTERS, INC.,**
**Defendant-Appellee.**

No. 86–2542.

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1987.

Decided July 15, 1987.

Rehearing Denied Aug. 5, 1987.

Phillip A. Terry, McHall Cook & Welch, P.C., Indianapolis, Ind., for plaintiff-appellant.

Thomas C. Scherer, Bamberger & Feibleman, Indianapolis, Ind., for defendant-appellee.

Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

This diversity action arises from a contractual dispute between Monarch Beverage Co., Inc. (Monarch) and Tyfield Importers, Inc. (Tyfield). In the district court, Monarch filed a seven-count complaint for: 1) breach of contract, 2) premature termination of contract, 3) unreasonable notice of termination, 4) fraud and misrepresentation, 5) breach of duty of good faith and fair dealing, 6) price discrimination, and 7) promissory estoppel. Amended Complaint, R.5. The district court determined that Tyfield had breached its contract with Monarch and awarded Monarch $13,908 for Tyfield's failure to ship an order of goods. The district court entered judgment for the defendant on the remaining counts. In this appeal, Monarch raises three issues: 1) whether Tyfield gave unreasonable notice of its termination of the contract, 2) whether Tyfield committed fraud, and 3) whether Monarch can recover under the doctrine of promissory estoppel. For the reasons set forth below, we affirm in part, vacate in part and remand the case.

## I

### Facts

Monarch, an Indiana corporation, is a wholesaler of wine products. Tyfield, a Michigan corporation, is the exclusive importer in the United States of a brand of sparkling wine called Tosti Asti Spumante (Tosti). In October 1981, Monarch and Tyfield entered into an oral agreement providing that Monarch would become an Indiana distributor of Tosti. This agreement was terminable at will by either party, with or without cause. As a distributor, Monarch purchased Tosti from Tyfield and sold it to retail customers.

On July 5, 1983, William V. Graves, the regional sales manager of Tyfield, met with two employees of Monarch, Donald Hammond and Christopher Arn. Mr. Arn was Monarch's wine sales manager and Mr. Hammond was Monarch's sales manager. At this meeting, Mr. Graves informed Monarch that National Wine & Spirits, Inc. (National), the largest direct competitor of Monarch, was being appointed a distributor for Tosti in Monarch's market of central Indiana. At this meeting, Mr. Hammond opined to Mr. Arn, in Mr. Graves' presence, that he believed Monarch was being "dualed," meaning that Monarch and National would both be Tosti distributors in central Indiana. Mr. Graves failed to respond to Mr. Hammond's comment about the future status of Monarch and National as distributors. Mr. Graves neither stated that Monarch was being terminated nor specifically agreed that Monarch's future status would be that of a dual distributor.

On September 14, 1983, Mr. Hammond, on behalf of Monarch, ordered 1,200 cases of Tosti from Tyfield. The order was confirmed both by a telephone conversation and by a letter. Tyfield neither shipped the order to Monarch nor advised Monarch that it had no intention of doing so. Because the wine was imported from Italy, the shipment normally would have taken six to eight weeks to arrive.

Tyfield had told National that its distributorship would be exclusive. During September 1983, National experienced difficulties securing the business of prospective customers who were still purchasing Tosti from Monarch. National, therefore, requested a letter from Tyfield confirming its exclusive distributorship. In response to National's demand, Tyfield then sent it a letter dated September 21, 1983. This letter designated National a "master distributor" for Indiana, but failed to state that this distributorship was exclusive. Tyfield sent another letter, dated October 4, that added the word "exclusive." As a result of National's distributorship, Monarch's customers became confused as to its status as a distributor. Tyfield was aware of the confusion among Monarch's customers and Tyfield also knew that Monarch continued advertising the wine. Tyfield, however, never questioned Monarch about its representation that it was a Tosti distributor.

On November 3, 1983, Tyfield sent Monarch a letter stating that it was terminated "effective immediately" as a distributor. On the termination date, Monarch had no unfilled orders for wine products from Tyfield other than the September 14 order for 1,200 cases of Tosti. The sale of Tosti amounted to only one percent or less of Monarch's total business.

## II

### The District Court Opinion

The district court held that Tyfield breached its contractual duty to sell and deliver the September 14 order of 1,200 cases of Tosti to Monarch. In addition, the district court held that Tyfield breached its duty to give Monarch reasonable notice of its termination of the distributorship agreement. The district court found that a reasonable notice would have been 30 days notice. The district court calculated Monarch's damages resulting from Tyfield's breach to equal its gross profit for the sale of the 1,200 cases of Tosti. The profit would have been $11.59 per case, totalling $13,908. The district court further held that Monarch failed to prove its other claims of breach of good faith and fair dealing, fraud, and price discrimination. The district court accordingly entered its judgment that Monarch recover $13,908

from Tyfield along with the costs of the action.

## III

## Analysis

### A. *Reasonable Notification of Termination*

Monarch first contends that the district court erred in deciding that Tyfield could terminate its distributorship agreement upon only 30 days notice, rather than 90 days notice. Tyfield responds that the district court's finding that 30 days notice of termination was reasonable is not clearly erroneous. It further contends that 30 days constituted reasonable notice because 30 days notice was the industry practice and 30 days afforded Monarch ample time to contract for a substitute brand of sparkling wine. We believe that the district court's finding that, in this situation, 30 days constituted reasonable notice of termination of the distributorship agreement should not be overturned.

The parties' distributorship agreement for the sale and purchase of wine products is governed by the Indiana Uniform Commercial Code (UCC). *See Moridge Mfg. Co. v. Butler*, 451 N.E.2d 677, 680 (Ind.Ct.App.1983); *Warrick Beverage Corp. v. Miller Brewing Co.*, 170 Ind.App. 114, 352 N.E.2d 496, 500 (1976). Indiana's version of the UCC provides that where a contract is terminable at will, reasonable notification must be given by the party terminating the contract. Ind.Code § 26–1–2–309(3); *see also B & T Distrib., Inc. v. Meister Brau, Inc.*, 459 F.2d 29, 31 (7th Cir.1972). "What is a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action." Ind.Code § 26–1–1–204(2). "[T]he application of principles of good faith and sound commercial practice normally call for such notification of the termination of a going contract relationship as will give the other party *reasonable time to seek a substitute arrangement.*" Ind.Code § 26–1–2–309, comment 8 (emphasis supplied); *see also Zidell Explorations, Inc. v. Conval*

*Int'l, Ltd.*, 719 F.2d 1465, 1473 (9th Cir. 1983).

The parties agree that the district court's conclusion that the 30 days notice of termination was reasonable is a finding of fact. As a finding of fact, it must be reviewed under the clearly erroneous standard. A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)); *see also Yowell v. United States Postal Serv.*, 810 F.2d 644, 648 (7th Cir. 1987); *Hayden v. Oak Terrace Apartments*, 808 F.2d 1269, 1271 (7th Cir.1987). There is sufficient evidence in the record to support the district judge's conclusion that 30 days provided a reasonable period for notice.

Thirty days provided Monarch with sufficient time to find a substitute product for the Tosti Asti Spumante. On cross-examination, Mr. Hammond testified that Monarch could have contracted for another brand of sparkling wine to substitute for Tosti. Tr. I at 148. As a distributor of Martini & Rossi Asti Spumante, the best-selling brand in the Indianapolis market, Monarch could have substituted that brand for Tosti. Moreover, Tosti's sales constituted only one percent or less of Monarch's total sales. Monarch contends that thirty days notice was unreasonable because the termination occurred at the beginning of November, right before its period of peak sales during the holiday season. However, considering that Monarch had not placed another order for Tosti since September 14 and that the shipments normally take six to eight weeks to arrive, it appears that the September order was intended to cover the holiday season. Under the district court's judgment, Monarch has recovered its lost profits for that shipment. After considering the facts and circumstances underlying the distributorship agreement between

Monarch and Tyfield, we conclude that the district court's finding that 30 days notice of termination was reasonable is not clearly erroneous.[1] *See generally Rockwell Eng'g Co. v. Automatic Timing & Controls Co.*, 559 F.2d 460, 463 (7th Cir.1977) (holding that a twenty-eight-day notice of termination of a distributorship agreement of indefinite duration was reasonable under Indiana law).[2]

## B. *Fraud and Misrepresentation*

Monarch contends that Tyfield is liable for fraud and misrepresentation under Indiana common law. According to Monarch, the fraud arose from the July 5, 1983 meeting between Mr. Graves and Monarch's representatives. At that meeting, Mr. Graves informed Monarch that National was to be a distributor for Tosti in Monarch's market. According to Monarch, Mr. Graves did not state that Monarch was being terminated as a distributor nor did he correct Monarch's representatives' understanding that Monarch was being "dualed." Monarch submits that Mr. Graves encouraged Monarch to continue making sales of Tosti and that Tyfield accepted, on September 14, 1983, an additional order after the July 5 meeting. Monarch further contends that, prior to the July 5 meeting, Tyfield had decided to terminate Monarch as a distributor and that, at the time it accepted the September order, it had already decided not to honor Monarch's orders. Tyfield contends that Mr. Graves did not commit fraud, but merely "failed to state in so many words to Hammond and Arn that Monarch was being terminated, rather than dualed." Appellee's Br. at 18 (quoting *Monarch Beverage Co., Inc. v. Tyfield Importers, Inc.*, No. 84–34–C, mem. op. at 3 (S.D.Ind. Aug. 14, 1986); R.8 at 3 [hereinafter cited as Mem. op]). Tyfield maintains that, in the highly charged atmosphere of the meeting, Mr. Graves was merely unable to explain clearly the termination situation to Monarch's representatives.

Under Indiana law, the essential elements of fraud are a "material representation of past or existing facts, which representation is false, made with knowledge or reckless ignorance of its falsity, which causes reliance to the detriment of the person relying upon it." *First Nat'l Bank of New Castle v. Acra*, 462 N.E.2d 1345, 1348 (Ind.Ct.App.1984); *see also Vaughn v. General Foods Corp.*, 797 F.2d 1403, 1410 (7th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1293, 94 L.Ed.2d 149 (1987). In other words, "the essential elements of actionable fraud are representations, falsity, scienter, deception, and injury." *Royal Business Mach. v. Lorraine Corp.*, 633 F.2d 34, 45 (7th Cir.1980). "Both omissions and misrepresentations are actionable under Indiana law." *Vaughn*, 797 F.2d at 1410–11. However, "where there is no duty to speak or disclose facts, silence will not constitute actionable fraud. Moreover, the burden of showing a duty to speak is on the party alleging fraudulent conceal-

---

1. Monarch also contends that the 90 days notice period provided for by the Indiana Deceptive Franchise Practices Act should be applied to terminable-at-will distributorship agreements. Appellant's Br. at 28. We find this argument to be unpersuasive. Indiana's version of the UCC provides for "reasonable notice." Reasonable notice depends upon all the factors and circumstances of the particular commercial arrangement. Franchise agreements generally are treated differently than other commercial arrangements because franchise agreements often require the franchisee to make a substantial investment in the product or line of goods provided by the franchisor.

2. Monarch also relies on the common law doctrine of promissory estoppel to argue that Tyfield is prohibited from terminating Monarch's distributorship agreement in less than 90 days

notice. Under this theory, Monarch contends that it relied upon Tyfield's representation that Monarch would continue to be a Tosti distributor. Monarch claims that it relied on this representation by displaying the wine prominently on its shelves and by representing to its retailers that it would sell the wine during the holiday season. Monarch claims it is entitled to damages of $32,452 because it claims it would have sold 2,800 cases of Tosti during the holiday season. The district court found that 30 days constituted reasonable notice of termination. It also found that Monarch had suffered no damages other than lost profits from the unhonored order of September. Neither of these findings is clearly erroneous. Therefore, the district court's judgment denying relief to Monarch on its promissory estoppel claim must stand.

ment." *Barnd v. Borst,* 431 N.E.2d 161, 168 (Ind.Ct.App.1982).

In assessing Monarch's claim, we are bound by the factual determinations of the trial judge unless they are clearly erroneous. *See Anderson,* 470 U.S. at 573, 105 S.Ct. at 1511; *see also Yowell,* 810 F.2d at 648; *Hayden,* 808 F.2d at 1271. While a trial court making findings of fact "need not indulge in exegetics, or parse or declaim every fact and nuance and hypothesis," *United States v. Northside Realty Assoc., Inc.,* 474 F.2d 1164, 1170 n. 5 (5th Cir.1973) (quoting *Gulf King Shrimp Co. v. Wirtz,* 407 F.2d 508, 516 (5th Cir.1969)), it is necessary "to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2579, at 710 (2d ed. 1984). Therefore, the findings of fact must "include as many of the subsidiary facts as are necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Denofre v. Transportation Ins. Rating Bureau,* 532 F.2d 43, 45 (7th Cir.1976). *See generally Schneiderman v. United States,* 320 U.S. 118, 129–31, 63 S.Ct. 1333, 1338–39, 87 L.Ed. 1796 (1943); *Kelley v. Everglades Drainage Dist.,* 319 U.S. 415, 422, 63 S.Ct. 1141, 1145, 87 L.Ed. 1485 (1943) (per curiam); *Louis Vuitton, S.A. v. K–Econo Merchandise,* 813 F.2d 133, 134–35 (7th Cir.1987); *Andre v. Bendix Corp.,* 774 F.2d 786, 800–01 (7th Cir.1985); *Mozee v. Jeffboat, Inc.,* 746 F.2d 365, 370 (7th Cir.1984); *Rucker v. Higher Educ. Aids Bd.,* 669 F.2d 1179, 1183–84 (7th Cir.1982).

In this case, the trial court made findings of fact and incorporated by reference the stipulated facts of the parties. Read in their entirety, these findings do not make it clear how the district court reached its decision that Monarch did not establish its contention that fraud was committed by Tyfield. Our difficulty is compounded by the district court's failure, in its conclusions of law, to analyze the findings it did make in light of the elements of fraud under the law of Indiana. We are told only

that "[t]he law is with the defendant" on the fraud count of the complaint. Mem. op. at 6.

Under these circumstances, we believe the proper course is to vacate that part of the district court's judgment which finds for the defendant on the fraud count. On remand, the district court should enter more precise findings of fact and conclusions of law with respect to this count. It will be for the district court to decide whether those findings can be made on the present record or whether additional evidence must be received. *See McGregor Blvd. Church of Christ v. Walling,* 428 F.2d 401 (5th Cir.1970) (court of appeals had permitted further findings and conclusions on the same record or on supplemental record at discretion of trial court). If the district court adheres to its previous determination, it should, of course, enter judgment accordingly. If it determines that the plaintiff must prevail on the fraud count, it should proceed to consider the plaintiff's contention that it is entitled to punitive damages. *See J. Yanan & Assoc., Inc. v. Integrity Ins. Co.,* 771 F.2d 1025, 1133 (7th Cir.1985); *Art Hill Ford, Inc. v. Callender,* 423 N.E.2d 601, 602 (Ind.1981). If the district court finds in favor of the plaintiff, it should also consider the plaintiff's argument that it is entitled to attorneys' fees. *See* Ind.Code § 26–1–2–721 ("In all suits based on fraud or material misrepresentation, if the plaintiff recovers judgment in any amount, he shall also be entitled to recover reasonable attorney fees....").

### Conclusion

The judgment of the district court is affirmed in part and vacated in part. The case is remanded for proceedings consistent with this opinion. Each party will bear its own costs of this appeal.

IT IS SO ORDERED.