108 F.3d 1380
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard J. MURZYN, Defendant-Appellant.
 No. 96-2895.
 United States Court of Appeals, Seventh Circuit.
 Argued March 5, 1997.
Decided March 17, 1997.
 
 Before FLAUM, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Richard J. Murzyn pleaded guilty to one count of being a convicted felon in possession of firearms in violation of 18 U.S.C. § 922(g). Murzyn claims that he was entitled to a reduction pursuant to U.S.S.G. § 2K2.1(b)(2) because the firearms were used solely for lawful sporting and collecting purposes. The district court rejected this argument and sentenced Murzyn to 27 months' incarceration. The sole issue on appeal is whether the district court properly denied the reduction under § 2K2.1(b)(2).
 
 
 2
 In 1972, Murzyn was convicted of selling and disposing of stolen firearms and was sentenced to three years' incarceration. Before going to prison, he signed over a number of firearms to Shirley Bell with whom he lived. In 1979, Murzyn was convicted of conspiracy, interstate transportation of stolen automobiles, and the sale of stolen automobiles. The district court sentenced him to 16 years' imprisonment. He was released in 1990 and married Shirley Bell. His parole was revoked in 1992; he returned to prison and was released in 1993.
 
 
 3
 In 1995, an agent of the Bureau of Alcohol, Tobacco, and Firearms (ATF) and a task force agent, who were working undercover, met with Murzyn and Bell on Bell's property. Bell owned a twenty-four acre tract with a lake, a house, clubhouse, and a rental unit on the property. Murzyn talked to the officers in the clubhouse about hunting on the property. Murzyn showed the officers a gun safe containing a number of shotguns and rifles. The undercover officers purchased two stolen snowmobiles from Murzyn. On another occasion, the undercover agents talked with Murzyn in the main residence where Bell and Murzyn lived, observing firearms, a gun cabinet, and boxes of ammunition.
 
 
 4
 The agents then executed a search warrant of the residence, seizing twenty-six firearms. Two of the firearms were handguns, one of which was a loaded Walther .380 located in the master bedroom nightstand. The other handgun was a .22 caliber revolver. The remainder of the firearms were shotguns or rifles. The agents found over 7,000 rounds of ammunition, approximately 6,000 of which where shotgun shells. The remaining ammunition was for handguns, including the two handguns seized by the agents. The agents also found chain saws which were part of a lot stolen in St. Louis.
 
 
 5
 Murzyn pleaded guilty to one count of being a convicted felon in possession of firearms, but contested the sentencing recommendation. At sentencing, Murzyn's wife, Bell, testified that the firearms belonged to her and that she acquired them for investment and collection purposes. She also testified that she bought the handguns for self-protection. She stated that she kept the loaded Walther .380 in the nightstand and that Murzyn did not know it was there. However, she testified that she was unaware of documents which were also kept in the nightstand. These documents consisted of a NCIC printout requesting a trace on a boat and three mug shots from the Lake County, Indiana Sheriff's Police Department. Murzyn testified that he knew about the purchase of the Walther .380, specifically that he had spoken with the gun dealer about it. However, he testified that he did not know the location of Walther .380 in the residence.
 
 
 6
 Bell also testified that Murzyn did not know the location of the other handgun, which was stored in the closet. Both Bell and Murzyn testified that only she slept in the master bedroom where the two handguns were found and that Murzyn slept in the clubhouse. However, there was indicia of Murzyn's presence in the master bedroom area including men's clothing, cologne, shaving gear, and prescription medicine in his name. In addition, Murzyn admitted to the possession of all of the firearms seized, stating they were jointly possessed by himself and his wife for lawful sporting and collection purposes.[1] There is no dispute that Murzyn was a collector of guns and a sportsman. What is in dispute is the use and possession of the two handguns seized.
 
 
 7
 The district court concluded that U.S.S.G. § 2K2.1(b)(2) did not apply under the facts of the case. First, the court stated that Murzyn had pleaded guilty to possession of all of the firearms involved in the case, including the handguns, and this fact was not contradicted by the evidence presented at sentencing. The court also found that Murzyn's testimony of the purchase of the Walther .380 indicated that Murzyn had control over the firearm. Because the Walther .380 was kept loaded in a nightstand drawer, the district court concluded that it was being kept for self-protection. The court found Bell's testimony that Murzyn did not know the handgun was in the nightstand drawer incredible and concluded that Murzyn had shared access to the drawer, due to the NCIC printout and mug shots found there. Last, the district court concluded that the stolen chain saws on the property indicated illegal activity suggesting that the handguns were for personal protection, not lawful sporting or collection purposes.
 
 
 8
 Thus, the district court concluded that Murzyn was not entitled to a reduction under § 2K2.1(b)(2). The court adopted the probation officer's position as set forth in the Presentence Investigation Report and found Murzyn's total offense level of 16 with a Criminal History Category III; therefore, the sentencing range was 27 to 33 months imprisonment. The district court sentenced Murzyn to 27 months' incarceration.
 
 
 9
 The district court's determination of whether Murzyn possessed and used the firearms for lawful sporting or collection purposes within the meaning of § 2K2.1(b)(2) is a finding of fact, which we will reverse only for clear error. United States v. Hayes, 5 F.3d 292, 294 (7th Cir.1993). Sentencing Guideline § 2K2.1(b)(2) reads:
 
 
 10
 If the defendant, other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6.
 
 
 11
 In order for § 2K2.1(b)(2) to apply, the defendant must prove by a preponderance of the evidence that the firearm was possessed for sporting or collecting purposes only. United States v. Gresso, 24 F.3d 879, 880 (7th Cir.1994). The firearm must be of a type that would be acquired for sporting or collecting purposes and also possessed or used solely for those purposes. Id. at 881. Sporting or collecting purposes exhaust the excepted category; therefore, the scope of § 2K2.1(b)(2) does not extend to self-protection. Id. at 881-82. Application Note 10 of U.S.S.G. § 2K2.1(b)(2) reads in pertinent part:
 
 
 12
 Under subsection (b)(2), "lawful sporting purposes or collection" as determined by the surrounding circumstances, provides for a reduction to an offense level of 6. Relevant surrounding circumstances include the number and type of the firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law....
 
 
 13
 Murzyn asserts that the district court misapplied the Gresso holding and Application Note 10 of U.S.S.G. § 2K2.1(b)(2) because he claims the court made the finding that he "constructively" possessed the two handguns, which his wife allegedly owned. However, Murzyn fails to recognize that the district court properly followed the Gresso holding and Application Note 10. More important, the district court found that Murzyn had admitted to actual possession, evidenced by his plea agreement and his affidavit submitted during the presentence investigation. Thus, the issue of "constructive" possession is not relevant.
 
 
 14
 A reduction under § 2K2.1(b)(2) turns on the purpose, possession, and surrounding circumstances involving the firearm. See Application Note 10. Looking at the surrounding circumstances, the district court concluded that Murzyn was involved in the purchase of the Walther .380, implicating Murzyn's use and control. The district court concluded that the gun was for self-protection purposes, based on the gun being loaded and the presence of stolen chain saws on the property. In addition, the district court found both Murzyn's and Bell's testimony incredible that Murzyn did not occupy the master bedroom, nor knew that the Walther .380 was located in the nightstand. The court articulated that the NCIC printout and mug shots found evidenced Murzyn's shared access to the nightstand and his knowledge of the loaded Walther .380. This court defers to the district court's credibility determinations, as the district court is in the best position to observe the variations of witness demeanor. United States v. Hamm, 13 F.3d 1126, 1129 (7th Cir.1994).
 
 
 15
 The district court also stated that Murzyn pleaded guilty to possession of all of the firearms, including the handguns at issue. The court's finding that Murzyn possessed the handguns is further supported by Murzyn's affidavit submitted during the presentence investigation, in which he admits that he jointly possessed all of the firearms seized. Thus, Murzyn's argument that the district court erroneously found that he "constructively" possessed the firearms is irrelevant because the district court found that he had actually possessed the firearms. Therefore, the district court's conclusion is in line with Gresso.
 
 
 16
 After reviewing the record, this court is not left with a "definite and firm conviction" that the district court was mistaken when it found Murzyn had not possessed the handguns for sporting or collecting purposes, but that Murzyn possessed them for self-protection purposes. See United States v. Hassan, 927 F.2d 303, 309 (7th Cir.1991) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)). Thus, the district court's factual findings were not clearly erroneous.
 
 
 17
 Therefore, the district court judgment is AFFIRMED.
 
 
 
 [1]
 See Presentence Investigation, Murzyn Affidavit p 18, which states:
 That all of the firearms which were seized by the ATF from this affiant's home on November 27, 1995, were being jointly possessed by this affiant and his wife, Shirley Bell, for lawful sporting purposes and/or collection purposes.