816 F.2d 674
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Mabel G. WELLS, Plaintiff-Appellant,
v.
VIRGINIA COMMONWEALTH UNIVERSITY; Wayne C. Hall,
Individually, Defendant- Appellees.
 No. 86-1561.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 4, 1987.
Decided April 9, 1987.
 
 Before PHILLIPS and WILKINSON, Circuit Judges, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.
 Sa'ad El-Amin, for appellant.
 David Lee Ross, Special Assistant Attorney General (Patrick B. Kelly, Special Assistant Attorney General, Virginia Commonwealth University Legal Advisor's Office; Mary Sue Terry, Attorney General of Virginia, on brief), for appellees.
 PER CURIAM:
 
 
 1
 Mabel Wells, as associate professor at Virginia Commonwealth University, appeals the district court's judgment that officials at Virginia Commonwealth University (VCU) did not discriminate against her on the basis of race or violate her due process rights when they denied her request to be promoted to full professor. Because we find no basis in the record for disturbing the district court's judgment, we affirm.
 
 
 2
 * Wells began her employment at VCU in 1973 as an assistant professor in the School of Social Work. In 1978 she received her Ph.D. in Social Work and was promoted to associate professor. In 1983, consistent with accepted practice, Wells nominated herself for promotion to full professor. In support of her nomination she submitted to the School of Social Work's promotion and tenure committee (School Committee) certain documents reflecting her scholarship, including an article published in a refereed journal, an article accepted for publication in a referred journal, a conference paper, a book review, and other written works. After reviewing Wells' promotion file the School Committee voted to recommend her promotion by a vote of five to two.
 
 
 3
 The Committee forwarded its recommendation to Dr. Grace Harris, the Dean of the School of Social Work. Adding her recommendation to that of the School Committee Dr. Harris stated:
 
 
 4
 [A]lthough her published work is somewhat limited, she had compensated for this by presenting papers, serving on accredidation [sic] teams and participating on various panels and programs at the local, state, and national level. This is not an unusual pattern for a faculty member in social work education, especially for one who has come into academia somewhat late. Her commitment to scholarly activity and development is evident, and her productivity is projected to increase over the next several years. She is currently engaged in several research projects and hopes to publish the findings of these projects.
 
 
 5
 These recommendations along with Wells' statement of self-evaluation and curriculum vitae were then forwarded to Dr. Wayne Hall, Provost and Vice-President for Academic Affairs. The other documents submitted by Wells were not forwarded but it was noted that these were available upon request.
 
 
 6
 Dr. Hall, without reviewing the written works submitted by Wells, decided against recommending Wells for promotion, observing that she was "lacking in research and publication at the levels expected of a full professor to gain national recognition." The positive recommendations of Dr. Harris and the School Committee and Dr. Hall's negative recommendation then went to the University Promotion and Tenure Committee (University Committee). The University Committee also voted against recommending Wells for promotion, stating:
 
 
 7
 Even though minimum criteria might have been met on the surface, the lack of scholarly activity and national reputation required or desired for advancement to the highest rank make a positive decision difficult. In view of all the evidence a negative decision is appropriate.
 
 
 8
 Because only positive recommendations of the University Committee are forwarded to the President of VCU, Wells' promotion request never received his consideration. Wells' appeal of the University Committee's negative recommendation to the University Promotion and Tenure Appeal Panel was unsuccessful.
 
 
 9
 Wells filed this action in 1985 alleging that the negative recommendations of Dr. Hall and the University Committee were the result of race and/or sex discrimination in violation of Title VII and 42 U.S.C. Secs. 1981 and 1983. She also alleged that defendants had violated her due process rights by failing to review all the materials in her promotion file. At the bench trial on her claim, Wells presented no direct evidence of racial discrimination, seeking instead to create an inference of discrimination by showing otherwise unexplainable disparate treatment. Her evidence of disparate treatment came entirely in the form of "summary sheets" that were used by the University Committee when evaluating candidates for promotion. These summary sheets were purported to demonstrate that whites with fewer publications and lesser qualifications than Wells had been promoted. Wells supported her due process claim by presenting evidence that neither Dr. Hall nor the University Committee had ever reviewed the examples of her scholarship submitted with her request for promotion.
 
 
 10
 Dr. Hall and members of the University Committee testified that the summary sheets were not always an accurate reflection of all the information available to the Committee about particular candidates. They also testified that race was not a factor in their decision not to recommend Wells for promotion.
 
 
 11
 The district court held that plaintiff had presented absolutely no evidence of discriminatory motive on the part of defendants and that the decision of defendants not to review the contents of Wells' publications and other materials did not rise to the level of a constitutional violation. Accordingly it found for defendants on all claims. This appeal followed.
 
 II
 
 12
 We cannot overturn the district court's finding that the decisions of Dr. Hall and the University Committee were not motivated by racial animus unless it is clearly erroneous. Pullman-Standard v. Swint, 456 U.S. 273, 287-89 (1982) (ultimate issue of discrimination is one of fact, subject to clearly erroneous review). A finding is clearly erroneous only if on review of the entire record the court is "left with a definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 573 (1984) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 394-95 (1948)).
 
 
 13
 Here the testimony of defendants that the summary sheets were not an accurate means of comparing candidates for promotion and that their decision not to promote Wells was based on her limited published scholarly work rather than her race is sufficient to require that we affirm the district court's finding of no discriminatory intent. A factual finding that is based on a decision to credit the testimony of witnesses who have given a factually-plausible version of events that is not internally inconsistent nor flatly contradicted by indisputable extrinsic evidence may but rarely be rejected as clearly erroneous. Anderson, 470 U.S. at 575. The testimony here in question is a plausible account that is not vulnerable on either score. We must therefore affirm the dispositive finding based upon its acceptance.
 
 
 14
 We also find no error in the district court's rejection of Wells' due process claim. We held in Siu v. Johnson, 748 F.2d 238 (4th Cir.1984), that even making the tenuous assumption that state procedures and regulations concerning the granting of tenure created a constitutionally protected property interest, the only process due would be freedom from so manifestly arbitrary and capricious a decision making process that the exercise of professional judgment could not be said to have been involved in the decision. Id. at 245. Later in that opinion we suggested that "reckless inattention to relevant materials" might arguably make a decision arbitrary and capricious. Id. at 246. Seizing on this suggestion, Wells argues that the failure of Hall and members of the University Committee to read the documents submitted in support of her request for promotion made their decision arbitrary and capricious.
 
 
 15
 Even assuming that Wells has a protectible property interest, the failure of some of the persons involved in the review process to read all of the materials submitted does not of itself demonstrate that the decision-making process was arbitrary and capricious. Wells' documents were studied and reviewed by the School Committee and Dean Harris before they made their promotion recommendations. Their comments on Wells' work were included in the materials submitted to Hall and the University Committee. That Hall and the University Committee felt comfortable in relying on that assessment does not suggest that their decisions were made arbitrarily and capriciously.
 
 
 16
 AFFIRMED.