935 F.2d 281
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
YOUNGSTOWN STEEL EQUIPMENT SALES INC., Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 90-5140.
 United States Court of Appeals, Federal Circuit.
 May 31, 1991.
 
 Before RICH, PLAGER and CLEVENGER, Circuit Judges.
 DECISION
 CLEVENGER, Circuit Judge.
 
 
 1
 Youngstown Steel Equipment Sales Inc. ("YSES") appeals the final judgment of the United States Claims Court dismissing its complaint seeking a commission on the proposed sale of certain steel equipment for the benefit of the United States Government. Youngstown Steel Equipment Sales Inc. v. United States, 20 Cl.Ct. 517 (1990). We reverse.
 
 OPINION
 
 2
 This case concerns an episode in the unsuccessful attempt of the Government to collect, by way of liquidation of collateral, on a defaulted loan to Youngstown Steel Corporation. The extensive opinion of the Claims Court relates the full history of the episode; here, we recite only the facts necessary to our disposition.
 
 
 3
 Youngstown Steel borrowed $8,750,000 from an agency of the United States Department of Commerce against the security of certain steelmaking equipment assets. Upon default of the loan, the Government seized the security and enlisted the assistance of YSES to liquidate the collateral. A contract between YSES and the Government conferred a 17.5% sales commission on YSES for all sales "effected" under the contract. As contemplated by that contract, YSES produced to the Government an offer to purchase from Multi Systems International ("MSI"). MSI's offer of $2,875,000 was unconditional, to be paid for with a 10% cash down payment and the balance payable from a irrevocable, confirmed letter of credit drawn on a "U.S.A. first-class bank". At no time did the Government contend that YSES's claim to its commission was undermined by the failure of MSI to identify a particular bank that would issue the letter of credit promised in the offer. MSI, through its President Brewington, testified that it was "ready, willing and able" to honor its unconditional offer. Brewington also testified that MSI was a world-wide organization with over $150 million in annual business. The Government made no attempt to discredit MSI's readiness, willingness or financial ability to fulfill its unconditional offer. Instead, the Government proved at trial that MSI planned to fund its offer by selling the steel equipment, after extensive refurbishment, to potential Chinese mainland purchasers, who would exchange titanium with other persons who in turn would provide the required letters of credit. Not surprisingly, the Government officials responsible for sale of the equipment, upon learning of the proposed transaction between MSI and its Chinese purchasers, found numerous possible risks that could impede the ability of MSI to recoup from its customers. Those risks were treated by the same Government officials as conditions, albeit unstated, to MSI's otherwise unconditional offer, and were the basis for the Government's refusal to accept MSI's offer.
 
 
 4
 The Government contends that YSES had a two-fold burden at trial: to prove it had a ready, willing and able buyer, Crowe v. Trickey, 204 U.S. 228 (1907), and to demonstrate that the Government's rejection of MSI's offer had no reasonable basis, Hoel-Steffen Constr. Co. v. United States, 684 F.2d 843, 848 (Ct.Cl.1982). At trial, YSES contended that it was entitled to the 17.5% commission because it produced a ready, willing and able buyer, and because the sale to MSI was aborted by the Government's arbitrary and capricious refusal to accept MSI's offer. The Claims Court, however, agreed with the Government that MSI was not "able to buy immediately" because "Brewington admitted that he did not have a firm offer from the Chinese." Upon review of the facts which proved the many pitfalls in the way of MSI's ability to consummate its deal with the Chinese, the Claims Court correctly concluded that MSI's offer, if it depended upon the successful participation by the Chinese, was not from a financially "able" buyer and was not accepted for several good and sound reasons.
 
 
 5
 The problem for the Government on appeal here is that, under the rule expressed in Anderson v. City of Bessemer, 470 U.S. 564, 573-74 (1985), the Claims Court clearly erred as a matter of fact in treating MSI's offer as conditional, and therefore erred as a matter of law in dismissing the complaint. Absent any evidence in the record that MSI could not make good on its offer, the Claims Court was bound to conclude on the facts that MSI was a ready, willing and able buyer. Since the offer was unconditional, the only evidence that would support a reasonable, or non-arbitrary, non-capricious, rejection of the offer would be factual proof of unmet conditions to the contract or of MSI's inability to perform. YSES demonstrated at trial that none of the Government's reasons for rejecting MSI's offer had anything to do with the unconditional offer MSI made "on its own behalf," 20 Cl.Ct. 521, or with MSI's own inability to fulfill its promise. It was therefore clearly erroneous for the Claims Court not to find the Government's refusal of MSI's offer to have been unreasonable.
 
 
 6
 The case was tried in the Claims Court and argued on appeal on the basis that YSES would succeed if it had produced a ready, willing and able buyer whose offer was not reasonably rejected, regardless of whether the buyer actually purchased the equipment. At oral argument here, the Government reached for a new issue to save its case: namely, that the contract requires "consummated" sales transactions in order to establish entitlement to commissions. The Government, however, does not point to any express provision in the contract to support its contention, which is inconsistent with the concession in its brief that production of a ready, willing and able buyer (whose offer is not reasonably declined) creates entitlement to the specified commission. We therefore decline to read the contract to require consummated sales in order to earn commissions.
 
 
 7
 YSES is entitled to its 17.5% commission. The judgment of the Claims Court is therefore reversed, and the case is remanded for calculation of the amount owing to YSES and entry of judgment in favor of YSES for that amount.
 
 COSTS
 
 8
 No costs.