**United States Bankruptcy Appellate Panel**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-6084EA

_____

In re:                                              *
                                                    *
John P. Ladika, Geraldine A. Ladika,         *
                                                    *
    Debtors                            *
---------------------------------------------------------------
-

John P. Ladika,                                     *
                                                    *
    Debtor - Appellant,                      *      Appeal from the
United States
                                                    *      Bankruptcy Court for the
       v.                               *      Eastern   District   of
Arkansas
                                                    *
Internal Revenue Service,                           *
                                                    *
    Creditor - Appellee                      *

_____

Submitted:  January 13, 1998
Filed:  January 30, 1998

_____

Before KOGER, Chief Judge, KRESSEL, and SCHERMER, Bankruptcy
Judges.

KOGER, Chief Judge.

    The debtor, John F. Ladika, appeals from a decision by the
bankruptcy court[1] to convert the debtors' Chapter 13 case to a
Chapter 7 case after a hearing on the motion to convert filed

---

[1]The Honorable James G. Mixon, Chief Judge, United States Bankruptcy Court for the
Eastern and Western Districts of Arkansas.

by the Internal Revenue Service.  For the following reasons,
we affirm.

FACTS

On February 28, 1997, John P. Ladika and his spouse, Geraldine A. Ladika, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. The filing was precipitated by the Internal Revenue Service's (the "IRS") levy upon an investment account owned by the debtors with a balance of approximately $170,000.00 seeking the payment of unpaid income taxes, penalties and interest for tax years 1980 through 1989. In their schedules, the Ladikas listed the IRS as a creditor and the IRS filed a proof of claim asserting a secured claim in the amount of $346,143.00; an unsecured priority claim in the amount of $3971.00; and an unsecured nonpriority claim in the amount of $312,473.16.

On June 19, 1997, the IRS filed a motion to dismiss the debtors' Chapter 13 case or in the alternative to convert the case to a Chapter 7. On September 4, 1997, the bankruptcy court held a hearing on the IRS's motion to dismiss or convert in addition to hearing a motion for relief from the automatic stay filed by the IRS; a motion filed by the debtors for determination of tax liability; the debtors' objection to the IRS's proof of claim; and an adversary proceeding for the turnover of the funds levied upon by the IRS. At the conclusion of the hearing the bankruptcy court ruled from the bench on all of the foregoing matters. John Ladika appeals only from the bankruptcy court's decision to convert the Chapter 13 case to Chapter 7, which is memorialized in an order filed on September 10, 1997, and which incorporates the reasons stated in open court. Geraldine Ladika did not appeal from any of the bankruptcy court's rulings.[2]

---

[2]Although at the conclusion of the hearing held on September 4, 1997, the bankruptcy court made oral rulings from the bench concerning all of the matters before it at that hearing, the only written order that has been filed with the clerk of the court and which is contained in the record on

3

The evidence at the hearing revealed that the debtors did
t pay federal income taxes for tax years 1980 through 1989.
On    tember 13, 1990, the debtors voluntarily filed for
          under Chapter 7 of the Bankruptcy Code in the Unite
States Bankruptcy Court for                              .
In  heir schedules filed in connection with this Chapter 7
  nkruptcy, the debtors listed the IRS as a creditor with
debt                                                     s
fo
tax liabilities as "fictitious and fraudulent concocted b
ignorant                                                 s
to make themselves look as though
The debt                                                 7
bankruptcy on January 22, 1991.

        January 1992, John Ladika received a settlement in
personal injury action in the amount of $700,000.00.  Afte
paying attorney's fees and reimbursing workers' compensation,
  hn Ladika received the net amount of about $350,000.00 from
tha  settlement.  On January 22, 1992, the debtors purchased
  home in Cleburne County, Arkansas for $178,000.00 cash.
Prior to purchasing the home, the debtors incorporated Ladika
                              elaware.  Ladika Industries,
Inc.  s a non-operating corporation that does absolutely no
  siness in the state of Arkansas or elsewhere.  Although the
debtor  purchased the home with their personal funds, they
                              ika Industries, Inc.  At the
hearing,                                                 n
th

---

appeal is the order filed on September 10, 1997, in which the bankruptcy court converted the debtors'
                        that the remaining oral rulings have not yet been reduced
to                                          We will only consider the issues
raised        context of the conversion of the debtors' case and it is not necessary to address the
                                        brief and by John Ladika in his brief and
reply brief.

were to die, it would not be tied up in probate for a couple of years." The debtors have lived in the home continuously since they bought it, and claim this property as their homestead in their 1997 bankruptcy schedules. On March 12, 1992, the debtors bought vacation property in Van Buren County, Arkansas for $900.00 cash. The debtors also titled this property in the name of Ladika Industries, Inc. The debtors invested the rest of the net proceeds of the settlement in an investment account with Pershing, a division of Donaldson, Lufkin & Jenrette Securities Corporation. After the IRS levied on this investment account on February 12, 1997, it received a check for the outstanding balance in the account in the amount of $170,957.81. The IRS was unable to levy on the investment account prior to February 12, 1997, because the municipal bonds in which the debtors invested did not mature until that time. On April 16, 1992, the debtors deeded their former residence in Orange County, California to one of

their sons and his wife.  The deed states that "this is a bonafide gift and the grantor received nothing in return."  In their 1990 bankruptcy schedules the debtors showed equity of $20,000.00 in this property.  At the hearing, John Ladika testified that the debtors transferred the Orange County property for "a handshake and a Hundred Dollars" to their son who also took over the $97,000.00 mortgage.  John Ladika stated that at the time of the transfer, the debtors possibly had $50,000.00 equity in the Orange County property.

As mentioned above, the debtors' history with the IRS began with their refusal to pay federal income taxes for tax year 1980.  For tax years 1980 through 1989, the debtors refused to pay federal income taxes under the belief that John Ladika "is and was an american [sic] worker on the american [sic] market, not living abroad, and exempt from a direct unapportioned tax."  For tax years 1980 through 1986 the debtors did not file federal income tax returns and for each of those years the IRS prepared substitute returns in order to calculate the debtors' income tax liability.  For tax years 1987 through 1989 the debtors did file income tax returns upon which the IRS based the debtors' income tax liability for each of those years.  The United States Tax Court made determinations of federal income tax liability for tax years 1980, 1981, 1983, 1984, 1986 and 1989 (the "tax court years").  The United States Tax Court decisions for those years were admitted as evidence at the hearing.  The tax years 1982, 1985, 1987 and 1988 were non-tax court years.  Certified copies of IRS transcripts of the Form 1040 United States Individual Income Tax Accounts of John P. and Geraldine Ladika that showed the income tax due for each of the non-tax court years plus penalties and interest, in addition to transcripts for the tax court years, were admitted as evidence at the hearing.  Certified copies of the federal tax liens filed in Cleburne County, Arkansas and Van Buren County, Arkansas were also

admitted as evidence in support of the IRS's secured portion of its claim.  The IRS transcripts of accounts do reflect that starting in December 1990, the debtors began making small payments to the IRS on the unpaid income taxes.  However, the debtors failed to make even a noticeable dent in the unpaid income taxes, penalties and interest due the IRS.   In 1994 the debtors did tender federal income tax returns to the IRS for tax years 1980 through 1986, but the IRS did not process the returns contending that the tax liability for tax years 1980, 1981, 1983, 1984 and 1986 had been previously determined by the United States Tax Court.

In their Chapter 13 plan, the debtors proposed to pay $2,256.00 per month for sixty months and $3,903.00 semi-annually for five years to the Chapter 13 Trustee to fund the plan. The bankruptcy court confirmed the debtors' plan on June 4, 1997. There were no objections to confirmation. The Chapter 13 plan provided that the IRS would be paid $2,106.00 per month on its secured claim, which the debtors showed as $99,102.00. The only other secured creditor listed was Sears, with a secured debt of $1,000.00. The debtors also proposed to apply the $3,903.00 semi-annual payments to the secured claims of the IRS and Sears, and to pay the nonpriority unsecured creditors a 100% distribution. In addition to the IRS, the debtors listed as unsecured nonpriority creditors the City of Orange Finance, Discover Card, Master Card, and the State of California Franchise Tax Board. The IRS is by far the debtors' largest creditor. The debtors showed no unsecured priority creditors in their schedules, and made no provision for the payment of unsecured priority claims in their Chapter 13 plan.

At the September 4, 1997, hearing, the IRS asserted that the debtors' Chapter 13 case should be either dismissed or converted to a Chapter 7 case for several reasons. First, the IRS contended that the debtors could not propose a feasible plan because the plan would require about a $3,500.00 payment per month for 60 months just to pay off the secured portion of the IRS's claim, which the debtors were unable to make. Second, the IRS argued that the unsecured portion of its claim exceeded the unsecured debt limits for Chapter 13 eligibility.[3] Finally, the IRS argued that the pre-petition actions of the debtors demonstrated that they acted in bad faith by filing the

---

[3]Section 109(e) of the Bankruptcy Code states in relevant part that "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 . . . may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e), as amended by the Bankruptcy Reform Act of 1994.

Chapter 13 bankruptcy petition, particularly the 1992 transfer of the Orange County, California property to one of their sons and his wife and the 1992 purchase of the Cleburne County, Arkansas and Van Buren County, Arkansas properties in the name of Ladika Industries, Inc, which the IRS asserted was just an attempt by the debtors to protect their assets from the IRS when they knew they were substantially indebted to the IRS.

At the conclusion of the hearing the bankruptcy court converted the debtors' Chapter 13 case to a Chapter 7 for the following reasons:

> [T]he evidence is, again, substantially, substantial and overwhelming that the debtor, as a tax protestor, filed frivolous returns and made frivolous contentions, and that these penalties are, no doubt, totally warranted.
>
> That being The Court's finding, that the claim [of the IRS] is correct, means that the debtor is not eligible for Chapter Thirteen relief. The question then becomes whether or not to dismiss the case or to convert it to Chapter Seven. I don't think the debtor is proceeding in good faith.
>
> This idea that you can title your personal residence in a non-existent, non-functioning corporation for purposes of avoiding probate is absurd. It doesn't accomplish that at all. And the only purpose of titling property in a defunct, non-operating corporation is to try to hinder and delay and avoid the efforts of the Government to collect their taxes. The Government, unlike creditors in general, has the ability under Federal Law to levy on and sell a debtor's homestead, whereas a regular creditor couldn't do that, a non-government creditor couldn't do that in this state.
>
> So The Court finds that the personal residence is not corporate property, that this is all a sham, that the residence belongs to the debtor, as does the lot at Fairfield Bay [in Van Buren County]. That's the debtors' property, not the corporation's. Therefore, the debtor appears here in this Court of Equity acting in bad faith. And that warrants, I think, conversion of the case to a Chapter Seven.
>
> The other reason I want to convert it to Chapter Seven is the debtor has played, I call it, a game with the Internal Revenue Service for all these

10

ars, avoiding the payment of taxes, and have n
reason to think that the debtor would not continue to
gage in this type of cleverness.  And, so, if
were to dismiss the case, that would leave the debtor
th the option of refiling at strategic points i
time,                                                    e
Government to
property                                                 ,
the case will be converted to a Chapter Seven.

Ladika appeals the bankruptcy court's ruling nverting the Chapter 13 case to a Chapter 7. In it appellate d after converted that it incorrectly calculated the its claim and concedes that the debtors do meet the debt limit to file a Chapter 13 bankruptcy.[4] maintains that this Court should u decision e shows that the debtors' filed their Chapter 13 bankruptcy


JURISDICTION

John Ladika timely filed his notice of appeal on Septemb 16, 1 See Fed. R. Bankr. P. 8002(a). The bankruptc court's a Chapt 7 case is a final order over which this Court has jurisdiction. See In re Nielsen, 211 B.R. 19 (B.A.P 8th Cir. 1997).


ISSUE RAISED ON APPEAL

use the IRS concedes that the debtors meet the deb limit requirements and are e bankru court did not address the feasibility of the re this Court is whether the ba

---

[4] IRS does not disclose to this Court the correct amount of the unsecured portion of its , however, this Court certainly expects the IRS to file an amended proof of claim with th bankruptcy court as soon as possible, if it has not already done so.

Chapter 13 petition in bad faith thus warranting conversion to Chapter 7.

<u>STANDARD OF REVIEW ON APPEAL</u>

The bankruptcy court's determination that the debtors acted in bad faith by filing their Chapter 13 bankruptcy petition is a factual finding reviewed under the clearly erroneous standard.  <u>See</u> <u>Noreen v. Slattengren</u>, 974 F.2d 75, 77 (8th Cir. 1992); <u>Handeen v. LeMaire (In re LeMaire)</u>, 898 F.2d 1346, 1350 (8th Cir. 1990); <u>Nielsen</u>, 211 B.R. at 21.  A bankruptcy court's finding of fact is clearly erroneous when the reviewing court is left with a "'definite and firm conviction that a mistake has been committed.'" <u>In re Waugh</u>, 95 F.3d 706, 711 (8th Cir. 1996) (quoting <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985)).  The appellant bears the burden of proving that the bankruptcy court's determination was clearly erroneous.  <u>See</u> <u>U.S. Machinery Movers v. Beller</u>, 280 F.2d 91, 95 (8th Cir.), <u>cert.</u> <u>denied</u>, 364 U.S. 903, 81 S. Ct. 236, 5 L. Ed. 2d 195 (1960).


<u>DISCUSSION</u>

Section 1307(c) of the Bankruptcy Code states in pertinent part:

> [O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

11 U.S.C. § 1307(c).  In <u>In re Molitor</u>, 76 F.3d 218, 220-21 (8th Cir. 1996), the Eighth Circuit Court of Appeals opined:

14

[A] Chapter 13 petition filed in bad faith may be onverted "for cause" under 11 U.S.C. § 13 *In re Eisen* . 19 curiam). Such cause includes filing a ition in bad faith. *See, e.g.* *Matter of Smith* ). The bad faith determination focuses on the totality of circumstances, specifically: (1) whether th debtor has stated his debts and expenses accurately; ntation to mislead

the bankruptcy court; or (3) whether he has unfairly manipulated the bankruptcy code. In re LeMaire, 898 F.2d 1346, 1349 (8th Cir. 1990).

See also LeMaire, 898 F.2d at 1353 (citations omitted) ("'[G]ood faith should be evaluated on a case-by-case basis in light of the structure and general purpose of Chapter 13.'" . . . "There are no 'precise formulae or measurements to be deployed in a mechanical good faith equation.'"); Nielsen, 211 B.R. at 22 (Additional relevant factors under the totality of the circumstances approach include "the type of debt sought to be discharged and whether such debt is dischargeable in a chapter 7 and the debtor's motivation and sincerity in seeking chapter 13 relief."); In re Bayer, 210 B.R. 794, 795-96 (B.A.P. 8th Cir. 1997) (discussing the good faith inquiry in the context of appellate review of the bankruptcy court's dismissal of the debtor's Chapter 13 case).

In LeMaire the Eighth Circuit opined:

[W]henever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistakable manifestations of bad faith, as we do here, confirmation must be denied.

Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse.

LeMaire, 898 F.2d at 1352 n.8 (alteration in original) (quoting In re Waldron, 785 F.2d 936, 941 (11th Cir. 1986)).

16

Here, there is more than ample evidence to support th
bankruptcy court's decision to convert the debtors' Chapter 13
se to a Chapter 7 case on the grounds of bad faith.  We d
not                                                          e
clea    erroneous.  By filing the Chapter 13 petition, the
btors have attempted to unfairly manipulate the Bankruptc
Code in their continued effort to evade the payment of federal
come taxes, penalties and interest, which have accumulate
from tax years 1980                                          a

received the net amount of approximately $350,000.00 from the settlement of a personal injury action. Instead of paying their debt to the IRS at that time, in January 1992 the debtors moved from California to Arkansas where they used $178,000.00 of the settlement proceeds to purchase homestead property in Cleburne County, Arkansas that they titled in the name of Ladika Industries, Inc., which is a non-operating corporation. The debtors also purchased vacation property in Van Buren County, Arkansas for $900.00, which they likewise titled in the name of Ladika Industries, Inc. Also in early 1992, the debtors transferred the almost $50,000.00 in equity in their former homestead in Orange County, California to one of their sons and his wife for no consideration. The debtors invested a large portion of John Ladika's settlement proceeds in municipal bonds, which did not mature until February 1997. Since at least 1992, the debtors have engaged in a scheme to place their assets beyond the reach of the IRS and the filing of the Chapter 13 bankruptcy petition was just another step in their plot. The debtors' actions "constitute a clear abuse of the legal process set forth in the Bankruptcy Act to aid and assist honest debtors," see Molitor, 76 F.3d at 221, and the bankruptcy court correctly put a stop to their sham activities designed to thwart the collection of the income taxes by the IRS.

## CONCLUSION

For the reasons stated, we affirm the decision of the bankruptcy court.

A true copy.

Attest:

18

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE