[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 11, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14738

_____

D. C. Docket No. 04-00014-CV-J-16-TEM

PRISON LEGAL NEWS,
a not-for-profit, Washington charitable
corporation,

                                               Plaintiff-Appellant,

versus

JAMES MCDONOUGH, in his official capacity as
Secretary, Florida Department of Corrections,
PAUL DECKER, in his official capacity as Warden
at Union Correctional Institution, et al.,

                                               Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 11, 2006)**

Before MARCUS, WILSON and COX, Circuit Judges.

PER CURIAM:

Prison Legal News ("PLN") sued for declaratory and injunctive relief under 42 U.S.C. § 1983, alleging that the Secretary of the Florida Department of Corrections James McDonough[1] and three prison wardens (collectively, "the FDOC") violated its First Amendment rights. PLN sought to enjoin the FDOC from prohibiting Florida inmates from receiving its magazine and from penalizing inmates whom PLN paid for writing articles for publication. PLN also sought a declaratory judgment that Fla. Admin. Code Ann. r. 33-602.207 ["Rule 33-602.207"], which prohibited inmates from receiving compensation for writing articles for publication, was unconstitutional. The district court granted the FDOC's motion for judgment as a matter of law. We affirm.

## I. Background

PLN is a not-for-profit charitable corporation that publishes a monthly magazine containing articles about prison legal issues written mostly by prison inmates. PLN pays its inmate writers for published articles pursuant to a written agreement. The magazine also contains advertisements for three-way calling services, pen pal services, offers to purchase prisoner artwork, and offers to purchase unused stamps. It is circulated to prisoners, attorneys, judges, and other

---

[1]Appellee James McDonough, in his official capacity as Secretary, Florida Department of Corrections, was substituted for James V. Crosby, former Secretary of the Florida Department of Corrections.

2

professionals in all 50 states. Approximately 181 subscribers of PLN are Florida prisoners. PLN sends subscription renewal notices to its Florida inmate subscribers and allows for several methods of payment including postage stamps.

Only one Florida inmate, David Reutter, has been paid for submitting articles to PLN. Several of his articles were published in issues from 2002 to 2005. The FDOC disciplined him twice for receiving compensation for his submissions in violation of Rule 33-602.207, which prohibits inmates from engaging in a business or profession while incarcerated. This rule includes the submission of a manuscript for publication if revenue is generated from the publication. After he was disciplined, Reutter continued to submit articles to PLN for publication without receiving compensation, which the FDOC permitted.

The FDOC's Admissible Reading Material Rule, Fla. Admin. Code Ann. r. 33-501.401, provides for the screening and impoundment of all incoming mail. All incoming mail is initially screened for material barred under the Rule. If the mail room official determines that a publication contains barred material, and the warden agrees, the prison impounds the publication. The prison then notifies the prisoner and the publisher of the impoundment and posts a notice of impoundment on the FDOC's electronic bulletin board. Thereafter, all Florida prisons must impound that publication. Next, the literature review committee reviews the

3

publication and makes the final decision on admissibility. If the committee overturns the impoundment, the publication is issued to the prisoners. Otherwise, it remains impounded and no prisoner is allowed to receive it.

Over a two-year period, the FDOC changed its position several times as to whether PLN's magazine contained prohibited material. In early 2003, the FDOC began impounding issues of PLN's magazine because they contained ads for three-way calling services, which are prohibited for Florida inmates because they pose a threat to prison security. In November 2003, the FDOC reversed its decision and allowed for delivery of eight issues that it had previously impounded. However, a month later, in December 2003, the FDOC again decided to impound the magazine for including three-way calling service ads due to ongoing security concerns. By March 2004, the FDOC was satisfied that its telephone provider could properly monitor prisoners' calls and that the three-way calling service ads were no longer a security concern. Therefore, the FDOC again approved delivery of the magazine.

In March 2005, the FDOC amended the Admissible Reading Material Rule to state that publications will not be rejected for containing ads for prohibited products or services, as long as those ads are "merely incidental to, rather than being the focus of, the publication." Fla. Admin. Code. Ann. r. 33-501.401. The Rule now delineates that a publication may not be prohibited because it contains

4

advertisements for three-way calling services, for pen-pal services, for the purchase of products with postage stamps, and for conducting a business while incarcerated. *Id.* Since this amendment, the FDOC has not impounded issues of PLN based solely on the advertisement content areas.

PLN filed a § 1983 suit, alleging violations of its First Amendment rights. After a three-day bench trial, the court entered judgment as a matter of law in favor of the FDOC. PLN now appeals. The Southern Poverty Law Center, the Southern Center for Human Rights, and the Society of Professional Journalists filed an amici curiae brief on behalf of PLN.

## II. Standard of Review

On appeal from a district court order after a bench trial, we review the district court's conclusions of law *de novo* and its findings of fact for clear error. *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 873 (11th Cir. 2005). A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985) (quotation omitted).

## III. Discussion

PLN raises two issues on appeal: (1) whether the FDOC's prohibition against inmates receiving compensation for their writing violates PLN's First Amendment rights as a publisher; and (2) whether the district court erred in denying PLN's request for a permanent injunction prohibiting the FDOC from impounding PLN's publications based on their advertising content.

A.      *The FDOC's Prohibition on Inmate Compensation*

PLN argues that the district court erred in ruling that Rule 33-602.207 of the Florida Administrative Code, which prohibits prisoners from receiving compensation for writing for publication, does not infringe on PLN's First Amendment rights as a publisher. It argues that the rule is an improper "financial disincentive" to inmates' expressive activity and that it has been injured because Reutter has less incentive and ability to write for PLN now that he is not compensated.

However, PLN has failed to show that it suffered a sufficient constitutional injury to justify relief under section 1983. PLN presented no evidence to show that the rule had any impact on its ability to publish the magazine. *See The Pitt News v. Fisher*, 215 F.3d 354, 366 (3d Cir. 2000) (denying injunctive relief because the newspaper merely showed that the challenged rule negatively impacted its profitability, but failed to show how the rule infringed on its First Amendment

6

right) *cert. denied*, 531 U.S. 1113, 121 S. Ct. 857, 148 L. Ed. 2d 771 (2001) . Its argument that the rule improperly dissuades inmates from expressing the truth about prison conditions is belied by the fact that Reutter continued to write for publication, despite not having the incentive of compensation. PLN has continued to publish on its traditional monthly schedule and Reutter has continued to submit numerous quality articles for publication, despite not having the incentive of compensation. Even taking the evidence in the light most favorable to PLN, there is simply no evidence that the Rule has had any impact at all on PLN's ability to publish its magazine and distribute the publication to inmates nationwide.

Moreover, to the extent that Rule 33-602.207 infringes on the First Amendment rights of inmates, the FDOC has a legitimate penological interest in preventing inmates from receiving compensation from outside business activities. In *Turner v. Safley*, 482 U.S. 78, 89, 91 107 S. Ct. 2254, 2261, 2263, 96 L. Ed. 2d 64 (1987), the Supreme Court stated that a prison's restriction on First Amendment rights is permissible if it is "reasonably related" to legitimate penological interests and is not an "exaggerated response" to such objectives. The Supreme Court reasoned that, although imprisonment does not automatically deprive a prisoner of First Amendment protections, the Constitution sometimes permits greater restriction on First Amendment rights in the prison context than it would allow

7

elsewhere. *Id.* at 84-85, 107 S. Ct. at 2259-60. To determine whether a prison restriction on First Amendment rights is reasonable, the Court set out four relevant factors: (1) whether there is a valid rational connection between the prison regulation and the legitimate governmental interest offered to justify the regulation; (2) whether alternative means exist to exercise the right; (3) what effect there will be on guards, inmates, and prison resources if the right is accommodated; and (4) whether the regulation is an exaggerated response to prison concerns because ready alternatives exists at a de minimis cost. *Id.* at 89-91, 107 S. Ct. at 2262. In *Turner*, the Court upheld a Missouri prison rule barring some inmate-to-inmate correspondence, ruling that it was reasonably related to legitimate security interests and did not unconstitutionally abridge the prisoners' First Amendment rights. *Id.* at 91, 107 S. Ct. at 2262-63. However, the Court struck down a prison rule prohibiting inmates from marrying unless there are compelling reasons to do so because it constituted an exaggerated response to rehabilitation and security concerns. *Id.*

Here, the district court found that the FDOC has legitimate penological interests in preventing inmates from receiving compensation for writing for publication: that the FDOC would become entangled in inmate business activities; that such business activities would perpetuate fraud, extortion, and disputes among

8

inmates and the public; that there would be increased administrative costs associated with increased business activity; and that the FDOC would be unable to effectively control the inmates' interactions. The court was "not willing to override these legitimate penological concerns." We agree and affirm the decision of the district court.

As noted by the *Turner* Court, "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform," and therefore, we must "accord deference to the appropriate prison authorities" to manage the prisons. *Turner*, 482 U.S. at 84-85, 107 S. Ct. at 2259; *see also Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003) (ruling that courts owe "substantial deference to the professional judgment of prison administrators"). Thus, because PLN did not present sufficient evidence of a constitutional injury to justify relief, and because the FDOC rule was reasonably related to legitimate penological concerns, the FDOC was free to invoke the rule preventing inmates from receiving compensation from outside business activities in this situation.

B. *Impoundment of PLN's Magazine*

Next, PLN argues that the district court erred in denying its request for a permanent injunction prohibiting the FDOC from impounding its publication based

on its advertising content. PLN does not challenge FDOC's rules and procedures for impounding and reviewing publications on their face. Rather, PLN argues that FDOC's practice of impounding publications based on advertising content violated its First Amendment rights and that an injunction is required to prevent further censorship.

We find that this argument is moot because of the 2005 amendment to the Admissible Reading Material Rule. We agree with the district court's finding that, although the FDOC previously wavered on its decision to impound the magazine, it presented sufficient evidence to show that it has "no intent to ban PLN based solely on the advertising content at issue in this case" in the future. The FDOC demonstrated that its current impoundment rule does allow for distribution of PLN in its current format and that the magazine will not be rejected based on its advertising content. The FDOC officially revised its impoundment rule and has not refused to deliver issues of the magazine since this amendment. *See Tawwab v. Metz*, 554 F.2d 22, 24 (2d Cir. 1977) (per curiam) (ruling that a claim for injunctive relief is moot when a change in official policy rectifies the alleged injustice); *see also, United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S. Ct. 361, 364, 21 L. Ed. 2d 344 (1968) (ruling that an injunction should not issue when "the likelihood of further violations is sufficiently

10

remote to make injunctive relief unnecessary").

We have no expectation that FDOC will resume the practice of impounding publications based on incidental advertisements. As to the current rule, we offer no opinion on its constitutionality.

## IV. Conclusion

We find that PLN failed to show it suffered sufficient constitutional injury because of Rule 33-602.207 to justify relief under section 1983 and we find that the Rule is reasonably related to legitimate penological concerns. Further, PLN's petition to enjoin FDOC from impounding publications based on advertising content is mooted by the FDOC's amendment to its policies and procedures. Therefore, we affirm the decision of the district court.

**AFFIRMED**.

11