FILED

MAY 29 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re: ) BAP No. CC-17-1235-LSKu
)
LEYLA FATIMA, ) Bk. No. 8:15-bk-15581-MW
)
          Debtor. ) Adv. No. 8:16-ap-01175-MW
_____ )
LEYLA FATIMA, )
)
          Appellant, )
)
v. ) **M E M O R A N D U M**[*]
)
JANUARY STERN, )
)
          Appellee. )
_____ )

Submitted Without Argument on May 24, 2018

Filed - May 29, 2018

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark S. Wallace, Bankruptcy Judge, Presiding

_____

Appearances: Appellant Leyla Fatima, pro se on brief; Neal S. Zaslavsky on brief for Appellee.

_____

Before: LAFFERTY, SPRAKER, and KURTZ, Bankruptcy Judges.

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Debtor Leyla Fatima appeals the bankruptcy court's entry of a default judgment finding her debt to Plaintiff-Appellee January Stern nondischargeable under §§ 523(a)(2) and (a)(6).[1] The bankruptcy court struck Ms. Fatima's answer and entered the default judgment as a terminating sanction after Ms. Fatima failed to comply with the bankruptcy court's order granting Ms. Stern's motion to compel Ms. Fatima to provide the initial disclosures required under Civil Rule 26(a), incorporated in bankruptcy via Rule 7026.

Under the facts presented, we find no abuse of discretion in the award of terminating sanctions. Accordingly, we AFFIRM.

## FACTS

In December 2012 Ms. Stern obtained an $815,000 judgment against Ms. Fatima in Orange County Superior Court on a cause of action for intentional misrepresentation. In the course of that litigation, Ms. Fatima failed to appear at her deposition and a subsequent hearing on Ms. Stern's motion for sanctions; the state court judge thus awarded discovery sanctions of $28,546.61 in addition to the principal amount of the judgment.

Ms. Fatima filed a chapter 7 petition in May 2013. That case was dismissed on the chapter 7 trustee's motion because Ms. Fatima failed to appear at her continued section 341 meeting. Ms. Fatima filed a second chapter 7 petition in November 2015. Ms. Stern timely filed an adversary proceeding seeking to except

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

the state court judgment from discharge under §§ 523(a)(2) and (a)(6) and for denial of discharge under various subsections of § 727(a). Ms. Fatima filed an answer, and the parties thereafter met and conferred as required under Civil Rule 26(f), agreeing to exchange initial disclosures by November 30, 2016. At Ms. Fatima's request, Ms. Stern's counsel, Neal Zaslavsky, agreed to extend the deadline to January 16, 2017, but Ms. Fatima did not timely provide the disclosures or contact Mr. Zaslavsky to request a further extension. Accordingly, on January 23, 2017, Ms. Stern filed and served a motion to compel Ms. Fatima's initial disclosures. Ms. Fatima did not file a response or appear at the hearing on the motion to compel.

On February 27, 2017, the bankruptcy court entered an order granting the motion to compel. The order required Ms. Fatima to make all required disclosures by March 15, 2017, and to pay Ms. Stern monetary sanctions of $4,000 by April 15, 2017. The order warned: "Defendant Leyla Fatima is further advised that her failure to comply with this Court's Order will result in the Court striking her answer and entering a default against her, absent extraordinary circumstances."

Ms. Fatima again failed to make the required disclosures. Accordingly, on March 16, 2017, Ms. Stern filed a motion for terminating sanctions against Ms. Fatima. Ms. Fatima did not file a written response, but she appeared at the hearing on April 19, 2017. At that hearing, Ms. Fatima indicated that she had the initial disclosures with her and could "turn them in," although she apparently did not do so. She explained that the delay was due to "confusion on my part not understanding exactly

-3-

what it was that I needed to do." She alluded to having been in Australia and not being properly served; she therefore asked the court for another extension of time to make the disclosures, which the bankruptcy court denied.

Mr. Zaslavky advised the court that although Ms. Fatima had not paid the $4,000 in monetary sanctions awarded in the court's February 27 order, he had agreed to an arrangement for Ms. Fatima to pay the sanctions by August 1.

After hearing argument, the bankruptcy court granted the motion for terminating sanctions pursuant to Civil Rule 37(b)(2)(A)(iii), applicable via Rule 7037. The court thereafter issued a memorandum decision and order striking Ms. Fatima's answer, directing the clerk of the court to enter default, and ordering Ms. Stern to file a motion for entry of default judgment by August 31, 2017. In the memorandum decision, the bankruptcy court found:

> The evidence here shows that Ms. Fatima, although self-represented, is no stranger to the judicial process in general and discovery rules in particular – and sanctions imposed when discovery rules are violated. . . . [S]anctions of over $28,000 were imposed against her in May 2012 in the Orange County Superior Court action when she failed to appear at her duly noticed deposition. Any reasonable person (and probably not a few unreasonable people as well) would understand the seriousness of discovery obligations and the seriousness of potential sanctions for discovery violations as a result of that experience.
>
> Soon after Ms. Fatima's main bankruptcy case began, she continued a pattern and practice of being obstructive and non-cooperative with respect to the obligations imposed by the legal process. At her section 341(a) examination, she refused to provide most of the documents she was ordered to provide as part of that examination, and she refused to answer most of the questions posed to her during that examination.
>
> As reviewed above, this pattern and practice of

-4-

obstruction and non-cooperation continued during this adversary proceeding. Despite the fact that she was given one chance after another to "get right" with her obligations regarding discovery – and knowing full well the consequences of disregarding these obligations – she continually failed to comply. Even the issuance of this Court's order compelling initial disclosures and the imposition of $4,000 in sanctions failed to motivate her to comply.

Ms. Fatima is not a person who is unfamiliar with the legal process and who is unsure of how to proceed. Rather, she is a person who has a long history of disregarding legal obligations and Court orders. She has not shown any physical or mental infirmity that prevented her from complying with the Court's order. Nor has she shown any other good cause for her failure to comply. The Court has observed her demeanor during hearings and does not believe she is a truthful, honest individual. The Court concludes and specifically finds that her failure to comply with this Court's order on the motion to compel is due to her (1) willfulness, (2) bad faith and (3) fault.

Memorandum Decision and Order at 4-5.

After entry of default, Ms. Stern filed a motion for entry of default judgment, supported by the declarations of Ms. Stern and her counsel, numerous exhibits, and a request for judicial notice. A few days later, Ms. Fatima filed a motion to set aside entry of default. The bankruptcy court issued an order finding the motion untimely but permitted hearing on July 26, 2017, the date set for hearing on Ms. Stern's motion for entry of default judgment, and extended the deadline for Ms. Stern to file an opposition.

At the hearing on the motions, the bankruptcy court permitted Ms. Fatima to argue at length. She indicated, first, that she was not necessarily familiar with the procedures involved in an adversary proceeding and that she had not delayed in an attempt to "drag this process out." Second, she described her efforts between December 2016 and May 2017 to get her son

into rehab for a drug addiction. Third, she expressed concerns that information she provided to Ms. Stern's counsel might be revealed to her allegedly abusive ex-husband and used against her. She accused Mr. Zaslavsky of mocking her during her 2004 examination regarding an alleged sexual assault she had suffered, and asserted that, given her post-traumatic stress disorder, "this all re-traumatizes me." She admitted, however, that at no point had she contacted Mr. Zaslavsky to explain her need for additional time.

The court denied with prejudice Ms. Fatima's motion to set aside the default on two grounds. First, the court found that the motion was untimely. Second, the court found that Ms. Fatima had not satisfied her burden under Civil Rule 60(b), applicable via Rule 9024, to show either newly discovered evidence or excusable neglect.

Ms. Fatima presented no argument in opposition to the motion for entry of default judgment, and the bankruptcy court granted it. The court entered a judgment on August 1, 2017 finding both the state court judgment and the state court sanctions award nondischargeable under §§ 523(a)(2) and (a)(6). Additionally, the judgment provided that Ms. Fatima was still liable for the $4,000 monetary sanction previously imposed by the court, along with interest at the federal judgment rate.[2]

Ms. Fatima timely appealed.

---

[2]The bankruptcy court later entered an amended judgment clarifying that the judgment was intended to be a final judgment.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court abused its discretion in entering a default judgment against Ms. Fatima as a terminating sanction.

**STANDARD OF REVIEW**

We review discovery sanctions, including terminating sanctions, for abuse of discretion. Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. United States v. Hinkson, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

Factual findings are reviewed for clear error. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985). Findings based on determinations of witness credibility are entitled to special deference. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009), aff'd, 407 F. App'x 176 (9th Cir. 2010) (citing Anderson, 470 U.S. at 573).

-7-

**DISCUSSION**

Civil Rule 37(b)(2)(A) provides in relevant part that if a party fails to obey an order to provide discovery, including an order under Rule 37(a), the court may issue further "just orders," including "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party." Civil Rule 37(b)(2)(A)(iii) and (vi). Where the sanction results in default, the sanctioned party's violations must be due to willfulness, bad faith or fault of the party. Hester v. Vision Airlines, Inc., 687 F.3d 1162, 1169 (9th Cir. 2012). In this context, willfulness, bad faith, or fault may be established by showing disobedient conduct not outside the control of the litigant. Henry v. Gill Indus., Inc., 983 F.2d 943, 948 (9th Cir. 1993). A court may consider prior misconduct when weighing a sanctions motion. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1411 (9th Cir. 1990).

In the Ninth Circuit, the bankruptcy court must apply a five-part test to determine whether a case-dispositive sanction under Rule 37(b)(2) is just: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. As to the fifth factor, the bankruptcy court must have considered and tried lesser sanctions and warned the recalcitrant party about the possibility of case-dispositive sanctions. Connecticut Gen. Life Ins. Co., 482 F.3d at 1096.

Here, as noted, the bankruptcy court found that Ms. Fatima's

-8-

failure to comply with the court's order on the motion to compel was due to willfulness, bad faith and fault based on her history of disregarding court rules and orders and her failure to show a physical or mental infirmity or other good cause for her failure to comply. Ms. Fatima does not explicitly dispute this finding.

The court then applied the Ninth Circuit test and found that the factors weighed in favor of a terminating sanction. The bankruptcy court found, first, that the adversary proceeding had been pending for more than nine months when the court first considered the motion for sanctions in April 2017 and that no initial disclosures had occurred, thus thwarting the public interest in expeditious resolution of the litigation.

Second, the court found that its docket would be "hopelessly overburdened" if all litigants behaved as Ms. Fatima had behaved in the adversary proceeding, noting that Ms. Fatima's conduct had "significantly impeded resolution of this action, caused delay and [had] adversely impacted the Court's ability to adhere to a trial schedule. . . ."

Third, the bankruptcy court found that Ms. Stern had been prejudiced because Ms. Fatima's refusal to provide initial disclosures had impaired Ms. Stern's ability to prepare for trial, Ms. Stern having asserted that she needed documents and information under Ms. Fatima's possession and control.

Fourth, while acknowledging that public policy favors the adjudication of cases on their merits, the court noted that "this factor lends little support to a party whose responsibility it is to move a case toward disposition but whose conduct impedes progress in that direction," citing <u>Allen v. Bayer Corp. (In re</u>

Phenylpropanolamine (PPA) Prods. Liab. Litig.), 460 F.3d 1217, 1228 (9th Cir. 2006).

Finally, as to lesser sanctions, the bankruptcy court found that even though the state court and the bankruptcy court had imposed monetary sanctions on Ms. Fatima for discovery abuses, those sanctions had not "achieved the effect of making Ms. Fatima understand the importance of complying with rules of procedure and court orders." Accordingly, the bankruptcy court concluded that lesser sanctions would be "utterly useless." The court also noted that it had specifically warned Ms. Fatima about the possibility of terminating sanctions if she failed to comply with the order on the motion to compel.

The bankruptcy court noted that it had considered the fact that Ms. Fatima was not represented by counsel but observed that the majority of pro se litigants "act in good faith, comply with the rules, get through the process and sometimes prevail." The court concluded that Ms. Fatima was not such a litigant, specifically finding that "Ms. Fatima is acting in utmost bad faith with respect to this case in general and this discovery matter in particular."

On appeal, Ms. Fatima focuses her argument on alleged verbal and psychological abuse she has suffered at the hands of Ms. Stern and Mr. Zaslavsky. Specifically, she complains about questions asked at her 341 meeting and 2004 examination that were not "asset-related."[3] She argues that the bankruptcy court "had

---

[3]Ms. Fatima's reply brief focuses almost exclusively on the 2004 examination and includes a copy of the transcript (BAP Dkt. (continued...)

-10-

a duty to hold [Ms. Stern and her counsel] accountable and demand that they remain focused on the asset related topics." She contends that the bankruptcy court did not take into account evidence of Ms. Fatima's diagnosis of PTSD, anxiety, and depression, and her fear over alleged connections between Ms. Stern and her counsel and Ms. Fatima's ex-husband, an alleged abuser. Finally, she argues that the bankruptcy court did not take her seriously and that she did not feel she was being heard.

None of these arguments persuade us that the bankruptcy court abused its discretion in granting terminating sanctions to Ms. Stern. The record reflects that Ms. Fatima has a history of ignoring her legal obligations despite being afforded significant leeway. Ms. Stern granted a nearly two-month extension to Ms. Fatima to provide the initial disclosures, and the bankruptcy court went out of its way to allow Ms. Fatima to present her case. The court permitted Ms. Fatima to argue at length at the hearing on Ms. Stern's motion for terminating sanctions even though Ms. Fatima had not filed a written opposition to that motion. The court also permitted extensive argument on Ms. Fatima's untimely motion to set aside default. Despite these opportunities, Ms. Fatima never presented coherent, specific argument or evidence explaining why she did not provide Ms. Stern with her Civil Rule 26 initial disclosures.

Moreover, the bankruptcy court found Ms. Fatima's explanations not credible, and we will not disturb that finding

---

[3](...continued)
No. 40).

on appeal. The court's credibility finding is bolstered by the fact that Ms. Fatima's arguments were inconsistent. She initially stated at the April hearing that she had the disclosures and the delay was due to her having been preoccupied for several months trying to get her son into rehab. At the same time, she asserted that she was afraid to provide any information to Ms. Stern because of concerns that such information would be shared with Ms. Fatima's ex-husband.

In any event, Ms. Fatima has not demonstrated that the bankruptcy court erred in finding that a terminating sanction was appropriate. As noted, Ms. Fatima was given every opportunity to comply with her discovery obligations. In its order on the motion to compel, the court imposed a not insignificant monetary sanction on Ms. Fatima and provided ample warning that a terminating sanction would result if Ms. Fatima failed to comply with the order. The court found that Ms. Fatima had a long history of disregarding legal obligations and court orders and had engaged in a pattern of obstruction and non-cooperation in the bankruptcy case. Moreover, the court found not credible Ms. Fatima's rambling and inconsistent explanations for her noncompliance. Ms. Fatima has not shown that these findings were illogical, implausible, or without support in the record, or that the bankruptcy court otherwise abused its discretion.

## CONCLUSION

For the reasons explained above, we AFFIRM the bankruptcy court's entry of a default judgment as a terminating sanction for Ms. Fatima's failure to comply with the court's order to provide initial disclosures.

-12-