FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 16, 2021**

Christopher M. Wolpert
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KENNETH CADE,

    Defendant - Appellant.

No. 19-3220
(D.C. No. 6:18-CR-10026-EFM-2)
(D. Kan)

**ORDER AND JUDGMENT**[*]

Before **PHILLIPS**, **SEYMOUR** and **CARSON**, Circuit Judges

    Kenneth Cade was sentenced to 144 months in prison after entering a conditional guilty plea on four counts of Interference with Commerce by Robbery under 18 U.S.C. § 1951(a) and one count of Brandishing a Firearm in Furtherance of a Crime of Violence under 18 U.S.C. § 924(c)(1)(A)(ii). The plea was entered following an evidentiary hearing on Mr. Cade's motion to suppress evidence and the district court's denial of the motion. This appeal arises from the single issue preserved: whether the district court erred in denying Mr. Cade's motion to suppress the statements of his mother, Janet Case,

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

based on the claim that her statements were involuntary and therefore violated Mr. Cade's due process rights under the Fifth Amendment. We affirm.

## Background

This case stems from four commercial armed robberies which occurred between November 2017 and February 2018. On February 12, 2018, police received an anonymous tip that Savannah Cole had robbed one of the stores. The officer called Ms. Cole's brother, who told them that Savanah and defendant Kenneth Cade had robbed a convenience store. On February 15, the officers interviewed Ms. Cole's brother, who identified his sister and Mr. Cade in various photos taken from surveillance footage of the robberies at the C-Store, Arby's and the Circle K. He also told them that Ms. Cole and Mr. Cade were staying at the home of Mr. Cade's mother, Janet Case.

That evening at approximately 7:00 p.m. numerous police officers surveilled Mrs. Case's home and believed they saw suspects matching the description of Mr. Cade and Ms. Cole enter the dwelling. They set up a perimeter around the residence and formulated a plan to conduct a knock and talk. As one of the officers approached the house, Ms. Cole opened the front door to bring trash out. When she saw the officers, she immediately hopped back inside and closed the door. At that point, the officer started kicking the door while screaming that it was the police and ordering someone to open the door and come out. Other officers intervened and stopped the attempt to break down the door.

2

A few minutes later an older woman, ultimately identified as Janet Case, appeared at the door. She was hysterical and through tears told the officers she had babies inside. She demanded to know why they were there and what they wanted. One of the officers explained that they were looking for her son and Ms. Cole. Mrs. Case called for her young granddaughters and one of them came outside. An officer took the child to an area away from the porch. Eventually both Mr. Cade and Ms. Cole were arrested and taken into custody. The police then cleared the home but did not seize any evidence.

Mrs. Case began to calm down after her daughter arrived and sat with Mrs. Case on the steps of the porch along with her two grandchildren.[1] At that point, the police began to ask Mrs. Case some basic questions. The officer acknowledged how scared she must be but he assured her she was not in trouble. He also told her that she did not have to answer his questions. He proceeded to ask Mrs. Case (whom he referred to as "mama") basic questions about whether it was her home, how long she had lived there, and whether Kenneth Cade was her son. After the officer concluded this general line of questioning, he specifically asked Mrs. Case if she felt better and whether she was calm. She replied that she was. He then advised her that other detectives might also want to question her.

Approximately forty minutes later, Mrs. Case agreed to go to the police station for

---

[1] The events and discussions at the home were recorded by Officer Boatright's body camera which was introduced and admitted into evidence as Government's Exhibit 1A. Rec., vol. 1 at 261.

additional questioning.    Based on Mrs. Case's responses during this interview and other

evidence included in a police affidavit, a search warrant for her home was issued. [2] The

police found a bag containing two guns, some cartridges, and Mr. Cade's identification

when they executed the search warrant.

In this appeal, Mr. Cade contends that the statements his mother gave at the police

station were involuntary and should have been suppressed because she was still in a state

of shock from the events at her home.[3]    As a result, Mr. Cade asserts that his Fifth

Amendment due process rights were violated.

On January 9 and 10, 2019, the district court held an evidentiary hearing on Mr.

Cade's motion to suppress.    Defense counsel represented to the district court that he

intended to call Mrs. Case as a witness.    Rec., vol. I at 95.    At the conclusion of the

hearing on January 9, the court specifically advised defense counsel that if Mrs. Case

could not be present on day two of the hearing, the court expected counsel to make a

proffer of what her testimony would be.    *Id.* at 328.    Because Mrs. Case was medically

unable to testify on January 10, defense counsel made a proffer of what her testimony

would have been, *id.* at 331-34, to which the government responded with its own proffer,

*id*. at 335-36.    The government also offered the report of Officer Thompson, the female

---

[2]The entire interview at the police station was recorded on video and admitted into evidence marked as defendant's Exhibit 9.    Rec., vol. I at 247.

[3]"A statement is involuntary if the government's actions caused the witness' will to be overborne and 'his capacity for self-determination critically impaired.'"    *United States v. Gonzales*, 164 F.3d 1285, 1289 (10th Cir. 1999) (modifications and citations omitted).

officer who took Mrs. Case inside her house to retrieve her medicine and change her clothes before she went to the police station.   *Id*. at 394.

The district court considered the sworn testimony of witnesses, the body cam videos, the proffers of counsel, and the totality of the circumstances in reaching its decision.   The court found that Mrs. Case's statements at the police station were voluntary and that Mr. Cade had failed to meet his burden to prove otherwise.   *Id*. at 77-78.   The district court concluded that Mr. Cade's Fifth Amendment due process rights were not violated.   Mr. Cade appeals.

**Analysis**

In reviewing a denial of a motion to suppress, we review the evidence in a light most favorable to the government and accept the findings of the district court unless they are clearly erroneous.   *United States v. Lopez*, 849 F.3d 921, 925 (10th Cir. 2017).   The factual findings of a district court are clearly erroneous if they are devoid of factual support in the record or, if this court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made.   *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).   "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse . . . . Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."   *Id.*   The ultimate issue of voluntariness, however, is a question of law we review de novo.   *United States v. McNeal*, 862 F.3d 1057, 1061 (10th

5

Cir. 2017) (citations omitted).

As the district court pointed out in its October 10, 2019 Memorandum and Order:

Generally, a defendant cannot suppress evidence obtained pursuant to a warrant based on a third-party's statement. However, in *United States v. Gonzalez*, the Tenth Circuit permitted a defendant to challenge the voluntariness of a third-party's statement to police, because that statement potentially implicated the defendant's Fifth Amendment due process rights. . . . Courts determine whether a statement was freely and voluntarily given based on the totality of the circumstances.

*Id.* at 72. (footnotes and citations omitted).

Based on our review of the video of the interview, Mrs. Case appears calm at the police station and her statements appear to be voluntarily made.[4] She was specifically told by the detective who interviewed her that she did not have to look at any photographs but she nevertheless agreed to do so. She was then shown various photographs which she was told depicted the scenes of different robberies. From the photos of the robbery of the C-Store, Mrs. Case identified Mr. Cade and Ms. Cole. In the photograph of the Arby's robbery, she recognized her son's jacket and a dress worn by Ms. Cole and thought that the jacket and dress could be found in her home. She could not recognize the people in the photos from the Circle-K robbery.

---

[4]During oral arguments before this panel, defense counsel asserted that Mrs. Case asked for a wheelchair to take her to and from the interview room at the police station and argued that this was evidence of the fact that she was still under duress from events earlier in the evening. This argument was merely conjecture by defense counsel, who offered no evidence in the district court to support this alleged nexus.

Although Mrs. Case was understandably hysterical earlier when the police initially surrounded her home to conduct a knock and talk, the video of her later interview at the police station is evidence that she was calm and that her answers were voluntarily given. Mr. Cade provided no evidence at the suppression hearing to prove otherwise. Mrs. Case did not testify at the suppression hearing and there was no expert testimony offered to establish that she was overborne or that her capacity for self-determination was critically impaired by what had occurred at her house prior to the police station interview.

Viewing the totality of the evidence in a light most favorable to the government, we are not persuaded that the district court erred in denying the motion to suppress. Accordingly, we affirm.

Entered for the Court


Stephanie K. Seymour
Circuit Judge

7